## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HDC HOLDINGS II, LLC, *et al.*,[1] | Case No. 24-12307 (TMH) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (C) SCHEDULING A FINAL HEARING; AND (D) GRANTING RELATED RELIEF

HDC Holdings II, LLC and its debtor-affiliates (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), hereby submit this motion (this "Motion") for the entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Interim Order"), pursuant to sections 105, 361, 362, 363, 506(c), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing the Debtors to use Cash Collateral (as defined below) and Prepetition Collateral (as

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: HDC Holdings II, LLC (2013); HDC Holdings III, LLC (3296); CCM Capital Assets, LLC (9451); Channel Control Merchants, LLC (3319); Dirt Cheap I, LLC (9433); CCM Support Services, LLC (2059); CCM Wholesale SE, LLC (7219); Channel Control Merchants of Texas, LLC (8091); Creative Sales Solutions, LLC (1691); Dirt Cheap Arkansas, LLC (0244); Dirt Cheap Building Supplies, LLC (0880); Dirt Cheap of Georgia, LLC (0269); Dirt Cheap of Louisiana, LLC (0067); Dirt Cheap SE, LLC (4928); Dirt Cheap Tennessee, LLC (1273); Treasure Hunt, LLC (9393); CCM Wholesale, LLC (7219); Channel Control Merchants of California, LLC (9011); and CAL Support Services, LLC (2859).  The Debtors' headquarters are located at 6892 US Hwy 49 North, Hattiesburg, Mississippi 39402.

defined in the Proposed Interim Order) subject to the terms and conditions set forth in the Proposed Interim Order, (b) granting adequate protection to the Prepetition Secured Lenders (as defined below) in the form and manner provided for in the Proposed Interim Order, (c) scheduling a final hearing on this Motion (the "Final Hearing") to consider the relief on a final basis (the "Proposed Final Order" and together with the Proposed Interim Order, the "Proposed Orders"), and (d) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Jeffrey Martin in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue of these Chapter 11 Cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]     Capitalized terms, including those in the Summary of Material Terms chart below, used but not otherwise defined herein shall have the meanings ascribed to them in the Proposed Orders.  To the extent there are any discrepancies between the Proposed Interim Order and Proposed Final Order, the Proposed Final Order, as approved by the Court, will control.

4.      The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 506(c), and 507 of the Bankruptcy Code, Bankruptcy Rules 4001, 6004, and 9014, and Local Rule 4001-2.

## BACKGROUND

5.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

6.      Additional factual background relating to the Debtors' business, capital structure and the commencement of these Chapter 11 Cases is set forth in detail in the First Day Declaration.

## PREPETITION SECURED DEBT OBLIGATIONS

7.      Debtors HDC Holdings III, LLC ("Borrower") and HDC Holdings II, LLC ("Holdings") are parties to that certain Amended and Restated ABL Credit Agreement, dated as of April 21, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "ABL Credit Agreement," and such facility, the "Pre-Petition ABL Facility"), pursuant to which, among other things, BMO Bank N.A. (f/k/a BMO Harris Bank N.A.) ("BMO"), as Agent[3] and Lender (each as defined therein), together with the other Lenders[4] from time to time parties thereto, extended credit from time to time to Borrower in the form of Revolving Credit Loans (as

---

[3]     Pursuant to the ABL Credit Agreement, BMO serves as the Administrative Agent, the Collateral Agent and the Joint Lead Arrangers and Bookrunners (each as defined therein).

[4]     As of the Petition Date, the Lenders parties to the Prepetition Loan Documents are BMO, Hancock Whitney Bank and Hilco Trading, LLC (collectively, the "Prepetition Secured Parties").

defined in the ABL Credit Agreement) in the aggregate amount of up to $36,500,0000 for working capital and other general corporate purposes. Specifically, the commitments under the Pre-Petition ABL Facility consist of (a) a first-in, last-out commitment from Hilco Trading, LLC ("Hilco Trading") in the amount of $5,000,000; (b) a $26,500,000 commitment from BMO; and (c) a $5,000,000 commitment from Hancock Whitney Bank ("Hancock").

8.     The ABL Credit Facility is guaranteed by that certain ABL Guarantee, dated as of July 19, 2017, in each case in favor of Agent, for the benefit of the Prepetition Secured Parties (as the same may be amended, restated, amended and restated, supplemented, reaffirmed or otherwise supplemented from time to time, the "ABL Guarantee"), pursuant to which Holdings and each Guarantor (as defined therein)[5] issued guaranties to support, among other things, the transfers made by Borrower to the Guarantors in connection with the operation of the Guarantors' businesses.

9.     As of October 8, 2024, the Debtors were liable to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents (a) in the aggregate principal amount of not less than $27,861,681.86 in respect of Revolving Credit Loans made to the Borrower and (b) for accrued and unpaid interest, fees, expenses (including advisors fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Loan Documents), disbursements, charges, claims, indemnities and other costs and obligations of whatever nature incurred in connection therewith which are chargeable or otherwise reimbursable under the Prepetition Loan Documents or applicable law, whether arising before or after the Petition Date, including any "Obligations" (as defined in the Prepetition Loan Documents), of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever

---

[5]    Each of the Guarantors and Borrower are Debtors in these Chapter 11 Cases.

arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition Loan Documents ((a) and (b) are collectively defined as the "Prepetition Obligations").

10.    Pursuant to and in connection with the Prepetition Loan Documents,[6] each Debtor granted to BMO, in its capacity as Agent and for the benefit of the Prepetition Secured Parties, continuing, legal, valid, binding, properly perfected, enforceable, non-avoidable first priority liens on and security interests in (the "Prepetition Liens") all of the "Collateral" (as defined in the Prepetition Loan Documents) (the "Prepetition Collateral"), which Prepetition Liens (a) secure all of the Prepetition Obligations, (b) are not subject to any contest, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, reduction, attachment, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross claim, set-off, offset, challenge, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any nature under the Bankruptcy Code or any other applicable law or regulation or otherwise, and (c) are and remain senior in priority over any and all other liens on and security interests in the Prepetition Collateral, subject only to valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent that such liens or security interests are senior to or pari passu with the Prepetition Liens (a "Permitted Encumbrance").

## RELIEF REQUESTED

11.    By this Motion, the Debtors request that the Court enter the Proposed Orders (a) authorizing the Debtors' consensual use of Cash Collateral and Prepetition Collateral, subject

---

[6]    "Prepetition Loan Documents" is hereby defined to include (i) the Credit Documents (as defined in the ABL Credit Agreement), (ii) the Security Documents (as defined in the ABL Credit Agreement); (iii) the ABL Guarantee (as defined herein) and (iv) the liens and security interests arising therefrom.

to the terms and conditions set forth in the Proposed Orders; (b) granting adequate protection to Prepetition Secured Parties in the form and manner provided for in the Proposed Orders; (c) scheduling a Final Hearing; and (d) granting related relief.

12.     Bankruptcy Rule 4001(d) provides that the Court may fix the time within which objections to the approval of an agreement relating to cash collateral and adequate protection pursuant to section 363 of the Bankruptcy Code must be filed.  In addition, the Court is empowered to conduct an expedited preliminary hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the debtor's estate.

### THE DEBTORS' IMMEDIATE NEED TO USE CASH COLLATERAL

13.     It is essential to the Debtors' efforts to preserve and maximize the value of their assets that the Debtors obtain the authority to use the cash derived from operating the business (the "Cash Collateral").  To that end, the Debtors and the Prepetition Secured Parties have reached an agreement on the consensual use of Cash Collateral and Prepetition Collateral to fund the administrative costs of conducting these Chapter 11 Cases, as reflected in the budget attached as **Exhibit 1** to the Proposed Interim Order (the "Initial Budget," and as may be amended, extended, and approved from time to time as set forth in the Proposed Interim Order, the "Approved Budget").  Such expenses include, but are not limited to, employee payroll and other benefits, and other expenses related to the Debtors' business operations.  The Approved Budget was prepared by the Debtors, with the assistance of their professionals, and reflects the Debtors' projected expenditures during the period from the Petition Date through and including the week ending January 5, 2025.  The Debtors believe that the use of Cash Collateral and Prepetition Collateral will be sufficient to fund the Debtors' operations and the costs of these Chapter 11 Cases without the need for debtor-in-possession financing.

14.     The reasons supporting the Debtors' need to use Cash Collateral and Prepetition Collateral during the course of these Chapter 11 Cases are compelling.  The use of Cash Collateral and Prepetition Collateral is required to fund the day-to-day operating expenses, including payments to employees and otherwise sustaining the going concern value of the Debtors' business.  Unless the Court authorizes the consensual use of the Cash Collateral and Prepetition Collateral, the Debtors will be unable to pay for services and expenses necessary to preserve and maximize the value of the Debtors' assets.  In fact, absent sufficient funds to support the Debtors' business operations, the value of the Debtors' assets will quickly erode.  Therefore, authorization to use Cash Collateral and Prepetition Collateral pending the Final Hearing is in the best interests of the Debtors' estates and creditors.

**BANKRUPTCY RULE 4001 AND LOCAL RULE 4001–2 CONCISE STATEMENT**

15.     The Debtors and the Prepetition Secured Parties have reached a consensual agreement with respect to the Debtors' use of Cash Collateral and Prepetition Collateral upon the terms and conditions set forth in the Proposed Interim Order and summarized below.  Pursuant to Bankruptcy Rules 4001(b)(1) and (d)(1) and Local Rule 4001-2(a), the Debtors submit the following concise statement of the material terms of the Proposed Interim Order:[7]

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | Prepetition Secured Parties | Proposed Interim Order at ¶ D(1). |

---

[7]     The following summary of the Proposed Interim Order is qualified entirely by reference to the applicable provisions of the Proposed Interim Order.  To the extent there are any inconsistencies between this summary and the provisions of the Proposed Interim Order, the provisions of the Proposed Interim Order shall control.  Any capitalized terms used but not otherwise defined in this summary shall have the meaning ascribed to such term in the Proposed Interim Order.

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Purposes for Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | To permit, among other things, the orderly liquidation of their operations, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs, in each such case in accordance with the terms of the Proposed Interim Order, including in accordance with the Budget. | Proposed Interim Order at ¶ H |
| **Budget**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii)<br><br>Local Rule 4001-2(a)(i)(E) | The Approved Budget setting forth the Debtors' projected cash receipts and disbursements on a consolidated basis for the period commencing on the Petition Date, which is attached as <u>Exhibit 1</u> to the Proposed Interim Order.<br><br>The Debtors' use of Cash Collateral and Prepetition Collateral shall be limited to the items set forth in the Approved Budget, subject to the Permitted Variances. | Proposed Interim Order at ¶ 3 & Ex. 1. |
| **Duration of Use of Cash Collateral/ Termination Events/ Relief from Stay**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(a)(i)(M) | <u>Termination of Cash Collateral Authorization.</u> Subject to any applicable cure or any notice period set forth below, if any, the Debtors' right to use Cash Collateral shall terminate (each of the following, an "<u>Event of Default</u>," and the date of any such Event of Default, the "<u>Termination Date</u>"), without prior order of this Court or any further action by the Agent and the Prepetition Secured Parties, unless such Event of Default is waived by the Agent in writing, on the earliest to occur of:<br><br>  a) the effective date of a confirmed plan in these Chapter 11 Cases;<br><br>  b) the failure to meet or satisfy any of the following milestones (the "<u>Case Milestones</u>"): (i) thirty-five (35) days after the entry of the Proposed Interim Order if the Final Order has not yet been entered; and (ii) completion of all of the Debtors' Store Closing Sales on or before December 31, 2024;<br><br>  c) the date the Debtors file or otherwise support any plan of reorganization, plan of liquidation, motion or other pleading to sell all or substantially all of the Debtors' assets, without the prior written consent of the Agent on behalf of the Prepetition Secured Parties;<br><br>  d) five (5) business days after the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment, or order enjoining the consummation of or rendering illegal the plan and either (i) such ruling, judgment, or order has been issued at the request of or with the acquiescence of the Debtors or (ii) in all other circumstances, such ruling, judgment, or order has not been stayed, reversed, or vacated within thirty (30) days after | Proposed Interim Order at ¶ 13 |

| SUMMARY OF MATERIAL TERMS |
|---|

|  |  |  |
|---|---|---|
|  | | such issuance; |  |
|  | e) | any Debtor's failure to comply with any of the material terms or conditions of this Interim Order, including, but not limited to, (a) the use of Cash Collateral for any purpose other than as permitted in this Interim Order, or (b) failure to comply with the Budget (including any distributions in excess of the Permitted Variance and Cumulative Permitted Variance that has not been resolved and approved, in writing, by the Agent); |  |
|  | f) | the failure of the Debtors to make any payment under this Interim Order to the Agent within ten (10) business days after such payment becomes due (other than payments required under Paragraph 5(f) of this Interim Order, which payments shall be made as required therein); |  |
|  | g) | the date of the Debtors' filing an application, motion or other pleading seeing to amend, modify, supplement, or extend this Interim Order without the prior written consent of the Prepetition Secured Parties; |  |
|  | h) | the Proposed Interim Order ceases, for any reason (other than by reason of the express written agreement by the Prepetition Secured Parties or the superseding of the Proposed Interim Order by the Final Order), to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by the Proposed Interim Order cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing; |  |
|  | i) | the Court shall have entered an order reversing, amending, supplementing, staying, vacating, or otherwise modifying the Proposed Interim Order in a manner materially adverse to the Prepetition Secured Parties without the written consent of the Agent on behalf of the Prepetition Secured Parties; |  |
|  | j) | the date of an application, motion, or other pleading is filed by the Debtors for the approval of any superpriority claim or any lien in these Chapter 11 Cases that is *pari passu* with or senior to the Adequate Protection Superpriority Claims or the Adequate Protection Liens without the prior written consent of the Prepetition Secured Parties; |  |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | k) the date any of the Debtors files any pleading or commences any action against the Prepetition Secured Parties challenging the validity or enforceability of the Prepetition Obligations, the Prepetition Loan Documents or the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to the Prepetition Obligations or the Prepetition Loan Documents;<br><br>l) the date (i) any court enters an order dismissing any of these Chapter 11 Cases, converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, appointing a trustee, responsible officer, or examiner with expanded powers relating to the operation of these Chapter 11 Cases or terminating the Debtors' exclusivity under Bankruptcy Code section 1121, unless consented to in writing by the Agent on behalf of the Prepetition Secured Parties, or (ii) the Debtors apply for, consent to, acquiesce in any such dismissal, conversion, or appointment; and<br><br>m) the filing of any pleading by any Debtor in support of (in any such case by way of any motion or other pleading filed with the Court or any other writing to another party in interest executed by or on behalf of any such Debtor) any other person's opposition to any motion filed in the Court by the Agent or any of the Prepetition Secured Parties seeking confirmation of the amount of their claims, including the Prepetition Obligations, or the validity or enforceability of the Prepetition Liens or the Adequate Protection Liens. | |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(a)(i)(F) | The Proposed Interim Order provides a Carve-Out (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to and in the aggregate of $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below) or 1104(a); (iii) solely to the extent allowed by order of the Court, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs, and expenses accrued or incurred by Carveout Professionals (as defined in the Proposed Interim Order); and (iv) Allowed Professional Fees in an aggregate amount not to exceed $250,000 incurred the first day following delivery by the Agent of the Carve-Out Trigger Notice. | Proposed Interim Order at ¶ 15. |

| SUMMARY OF MATERIAL TERMS |
|---|
| On a weekly basis, the fees and expenses of the Carve-Out Professionals (as defined in the Proposed Interim Order) shall be funded into an escrow account with Young Conaway Stargatt & Taylor, LLP to satisfy the funding of the Carveout pursuant to the Budget (the "Carve-Out Professional Fee Reserve"). The funds on deposit in the Carve-Out Professional Fee Reserve shall be payable to the Carve-Out Professionals solely when such Allowed Professional Fess are approved by (and pursuant to) an order of this Court; provided, however, for the avoidance of doubt, the Carveout Professionals shall retain the ability to apply any excess funds allocated to such Carveout Professional in the Carve-Out Professional Fee Reserve in one week to another week. |
| In the Proposed Interim Order, "Carve-Out Trigger Notice" means a written notice delivered by email by the Agent, for the benefit of the Prepetition Secured Parties, to the Debtors, the Debtors' counsel, the U.S. Trustee and counsel to any Creditors' Committee, which notice may be delivered only upon the occurrence and during the continuation of an Event of Default, stating expressly that the Carve-Out Trigger Notice Cap has been invoked. |
| On the day on which the Carve-Out Trigger Notice is delivered to the Debtors (the "Carve-Out Trigger Date"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to pay into the Carve-Out Professional Fee Reserve an amount equal to the then-unpaid and/or unfunded amounts of Allowed Professional Fees that have accrued in accordance with the Budget, subject to the Carve-Out Trigger Notice Cap. |
| On the Carve-Out Trigger Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtors, after funding of the Carve-Out Professional Fee Reserve, to fund a reserve (the "Carve-Out Trigger Notice Cap Reserve," and, together with the Carve-Out Professional Fee Reserve, the "Carve-Out Reserves") in an amount equal to the amounts set forth in clauses (i) (to the extent not previously paid), (ii) and (iv) of the definition of Carve-Out in Paragraph 15(a) above (the "Carve-Out Amounts"). All funds in the Carve-Out Trigger Notice Cap Reserve shall be first used only to pay the allowed obligations set forth in clauses (i) (to the extent not previously paid), (ii), and (iv) of the definition of Carve-Out in Paragraph 15(a) above until paid in full, and then, to the extent the Carve-Out Professional Fee Reserve has not been reduced to zero, to pay the Agent for the benefit of the Prepetition Secured Parties in |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | accordance with their rights and priorities as of the Petition Date. All funds in the Carve-Out Professional Fee Reserve shall be used to pay the Allowed Professional Fees until paid in full, and then, to the extent the Carve-Out Professional Fee Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in this Interim Order, the Agent shall have a security interest in and lien on any residual interest in the Carve-Out Reserves, with any such funds paid to the Agent for the benefit of the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. | |
| **Proposed Adequate Protection**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iv)<br><br>Local Rules 4001-2(a)(i)(K) | As proposed adequate protection for the interests of the Prepetition Secured Parties in the Prepetition Collateral for any diminution in value, from and after the Petition Date, resulting from, including but not limited to, the imposition of the automatic stay and/or the Debtors' use, sale, or lease of the Prepetition Collateral during these chapter 11 cases the Prepetition Secured Parties will receive the following, all as detailed more fully in the Proposed Interim Order:<br><br>Prepetition Secured Party Adequate Protection Liens.<br><br>(a)      *Adequate Protection Liens.* Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection against any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, effective as of the Petition Date and perfected without the need for execution by the Debtors or the recordation or other filing by the Prepetition Secured Parties of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Agent of any Adequate Protection Collateral (as defined below), the Agent is hereby granted, for the benefit of the Prepetition Secured Parties, solely to the extent of any actual diminution in value of the Prepetition Collateral and as security for the payment of the Adequate Protection Claim(s), valid, binding, continuing, enforceable, fully perfected, first priority senior replacement liens on and security interests in (collectively, the "Adequate Protection Liens") any and all tangible and intangible pre- and post-petition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, | Proposed Interim Order at ¶ 5 |

| SUMMARY OF MATERIAL TERMS |
|---|

documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (collectively, the "Adequate Protection Collateral"). Subject to and effective upon entry of the Final Order, the Adequate Protection Collateral shall also include, without limitation, the proceeds of any claims and causes of action of the Debtors arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (collectively, the "Avoidance Actions"); provided, however, that the Adequate Protection Collateral shall not include any Avoidance Actions of the Debtors.

The Adequate Protection Liens shall be junior only to (i) the Carve-Out and (ii) any Permitted Encumbrance. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on or claims against any of the Adequate Protection Collateral.

The Adequate Protection Liens shall not be subject to sections 506(c) (upon entry of the Final Order), 510, 549, 550 or 551 of the Bankruptcy Code. The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (each a "Successor Case").

(b)      Adequate Protection Superpriority Claims. The Adequate Protection Claims due to the Agent shall constitute allowed superpriority administrative expense claims against the Debtors and their estates in the amount of any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, 1114 and any other provision of the Bankruptcy Code, and shall at all times be senior to the

| SUMMARY OF MATERIAL TERMS |
| --- |

rights of the Debtors and any successor trustee or creditor in these Chapter 11 Cases or any Successor Case (the "Adequate Protection Superpriority Claims"), subject and subordinate only to the Carve-Out and fees payable under 28 U.S.C. § 1930.

(c)     *Payment of Prepetition and Postpetition Interest.* The Debtors shall pay to the Agent, for the benefit of the Prepetition Secured Parties, all accrued and unpaid interest (including, for the avoidance of doubt, interest accruing and becoming due after the Petition Date) at the applicable rates under, and consistent with the ordinary course interest payment dates set forth in, the Prepetition Loan Documents (the "Adequate Protection Interest Payments").

(d)     *Agent Fees and Expenses.*  As additional adequate protection, the Agent shall receive from the Debtors, for the benefit of the Prepetition Secured Parties, current cash payments of all reasonable and documented prepetition and postpetition fees and expenses payable to the Agent and/or the Prepetition Secured Parties under the Prepetition Loan Documents, including, but not limited to, the reasonable and documented prepetition and postpetition fees and disbursements of legal counsel, financial advisors and other consultants (the "Adequate Protection Fees and Expenses", and together with the Adequate Protection Interest Payments, the "Adequate Protection Payments"). Payment of all such Adequate Protection Fees and Expenses shall not be subject to allowance by the Court but shall be subject to the following process.  At the same time invoices are delivered to the Debtors, the professionals for the Prepetition Secured Parties shall deliver a copy of their respective invoices to (i) counsel for any official committee appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee") and (ii) the office of the United States Trustee (the "U.S. Trustee").  The invoices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee or the Creditors' Committee with respect to such invoices within ten (10) business days of receipt thereof will be resolved by the Court if necessary (absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Debtors.  Except as otherwise ordered by the Court in the event an objection is timely filed, such Adequate Protection Fees and Expenses shall

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever. | |
| **Modification of Stay**<br><br>Bankruptcy Rule 4001(d)(1)(iii) | <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to effectuate all of the terms and provisions of the Proposed Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition Secured Parties may request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Secured Parties under the Proposed Interim Order; (d) authorize the Debtors to pay, and the Prepetition Secured Parties to retain and apply, any payments (including the Adequate Protection Payments) made in accordance with the terms of the Proposed Interim Order and the Prepetition Loan Documents; and (e) permit the Prepetition Secured Parties to exercise all rights and remedies provided for hereunder and under the Prepetition Loan Documents. | Proposed Interim Order at ¶ 11. |
| **Milestones**<br><br>Local Rule 4001-2(a)(i)(H) | As a condition to the use of Cash Collateral and Prepetition Collateral, the Debtors shall materially comply with the "Case Milestones" set forth in paragraph 13(b) of the Proposed Interim Order. | Proposed Interim Order at ¶ 13(b). |
| **Limitation on Use of Proceeds**<br><br>Local Rule 4001-2(a)(i)(L) | Notwithstanding anything herein or in any other order by this Court to the contrary, no Cash Collateral, other Prepetition Collateral, proceeds, products, or offspring of any of the foregoing or any portion of the Carve-Out may be used (except to the extent otherwise expressly agreed in writing by the Agent, on behalf of the Prepetition Secured parties, in response to a written request from the Debtors specifying the proposed use) to pay any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee (including any Creditors' Committee), any trustee appointed under these Chapter 11 Cases or any Successor Case, or any other person, party, or entity (or to pay any professional fees and disbursements in connection therewith) to: (a) apply to the Bankruptcy Court for authority to approve superpriority claims or grant liens or security interests in the Prepetition Collateral, including the Cash Collateral, or any portion thereof, that are senior to, or on parity with, the Prepetition Liens, unless the Prepetition Obligations and claims granted to the Prepetition Secured Parties under the Proposed Interim Order, as applicable, have been refinanced or indefeasibly paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by | Proposed Interim Order at ¶ 24. |

| SUMMARY OF MATERIAL TERMS |
|---|
| the Agent, on behalf of the Prepetition Secured Parties; (b) to prevent, hinder or otherwise delay the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral, including Cash Collateral, and liens, claims and rights granted to the Prepetition Secured Parties under the Proposed Interim Order in accordance with the Prepetition Loan Documents or the Proposed Interim Order; (c) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties under the Proposed Interim Order or the Prepetition Loan Documents; (d) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are expressly provided for in the Budget and approved by an order of this Court that is in form and substance satisfactory to the Agent; (e) investigate, assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against the Agent or the Prepetition Secured Parties or their Representatives with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code, (ii) any action relating to any act, omission or aspect of the relationship between the Agent and/or the Prepetition Secured Parties, on the one hand, and the Debtors or any of their affiliates, on the other hand, (iii) any action with respect to the validity, extent and/or priority of the Prepetition Obligations, the Prepetition Liens and/or the Adequate Protection Obligations, (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Liens, the Adequate Protection Liens and/or Adequate Protection Obligations granted under the Proposed Interim Order, (v) except to contest the occurrence of any Event of Default as permitted in Paragraph 13, any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Agent and/or the Prepetition Secured Parties in respect of their liens and security interests in the Cash Collateral or the other Prepetition Collateral, (vi) pay any fees or similar amounts to any person to purchase the Prepetition Secured Parties' interests in any of the Debtors without the prior written consent of the Prepetition Secured Parties, unless such person consummates or otherwise closes the purchase of the Prepetition Secured Parties' interests in any of the Debtors, or (vii) use or seek to use Cash Collateral unless otherwise permitted hereby without the prior written consent of the Prepetition Secured Parties; or (f) for objecting to, contesting, delaying, preventing, hindering or otherwise interfering with in any way with the exercise of |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | rights or remedies by the Agent or the Prepetition Secured Parties with respect to any Prepetition Collateral, including Cash Collateral and any Adequate Protection Collateral, after the occurrence of an Event of Default; provided that, notwithstanding anything to the contrary in this paragraph, any Creditors' Committee may use Prepetition Collateral, including Cash Collateral, and the proceeds thereof to investigate (y) the claims and liens of the Prepetition Secured Parties, solely to the extent set forth in this paragraph (but not to prepare, initiate, litigate, prosecute, object to, or otherwise challenge any of the foregoing) and (z) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties solely to the extent set forth in this paragraph (but not to prepare, initiate, litigate, prosecute, object to, or otherwise challenge any of the foregoing); provided, further that not more than the aggregate of $25,000 of Prepetition Collateral, including Cash Collateral, and the proceeds thereof may be used by the Creditors' Committee in respect of the investigations set forth in the preceding proviso (the "Investigation Budget") | |
| **Stipulations**<br><br>Local Rule 4001-2(a)(i)(Q) | Paragraph E of the Proposed Interim Order includes customary stipulations concerning the indebtedness owed to the Prepetition Secured Parties and the liens and collateral securing such indebtedness. | Proposed Interim Order at ¶ E. |
| **Challenge Period**<br><br>Local Rule 4001-2(a)(i)(Q) | Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in the Proposed Interim Order, including, without limitation, in Paragraph E of the Proposed Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including a Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in these Chapter 11 Cases or any Successor Case, in all circumstances and for all purposes unless:   (a) such Creditors' Committee or any other party in interest, in each case with requisite standing, has filed (subject to the limitations contained herein, including, inter alia, in this Paragraph 21), by no later than a date that is the later of (i) in the case of a party in interest with requisite standing, including any Creditors' Committee, seventy-five (75) calendar days after entry of the Proposed Interim Order, (ii) with respect to any Challenge Proceeding against the Agent and/or any of the Prepetition Secured Parties, any such later date agreed to in writing by the Agent, for the benefit of the Prepetition Secured Parties, in its sole discretion; or (iii) any such later date ordered by the Court | Proposed Interim Order at ¶ 21. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | for cause shown after notice and an opportunity to be heard, provided that such order is entered before the expiration of any applicable period as set forth in clauses (i) through (iii) of this sentence (the "Challenge Period"), a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code), (A) contesting, objecting or otherwise challenging the admissions, stipulations, findings or releases included in the Debtors' Stipulations and the Proposed Interim Order, (B) contesting, objecting or otherwise challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), (C) contesting, objecting or otherwise challenging the right of the Prepetition Secured Parties to credit bid on the Prepetition Collateral pursuant to 363(k) of the Bankruptcy Code, or (D) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) or any other claims, counterclaims or causes of action, objections, contests, defenses, setoffs, offsets or recoupments, whether arising at law or equity, against the Prepetition Secured Parties or their respective officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their respective capacities as such (collectively, the "Representatives"), and solely in their capacities as Representatives of the Prepetition Secured Parties, in connection with (1) the prepetition business relationship between or conduct of the Prepetition Secured Parties with the Debtors, (2) the actions or inactions of the Prepetition Secured Parties arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the Prepetition Secured Parties in the nature of an "equitable subordination," "lender liability," "deepening insolvency" or "control person" liability, or (3) matters related to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens and the Prepetition Collateral ((A), (B), (C), and (D) collectively, a "Challenge Proceeding"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding. | |
| **Release of Prepetition Secured Parties**<br><br>Local Rule | The Debtors forever and irrevocably: (a) release, discharge and acquit the Agent and the Prepetition Secured Parties (but excluding Hilco Trading), and each of their respective former, current or future officers, employees, directors, | Proposed Interim Order at ¶ 25. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| 4001-2(a)(i)(Q) | agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type arising prior to the Petition Date, including, without limitation, any claims arising from any actions relating to any aspect of the relationship by and among the Agent, the Prepetition Secured Parties and the Debtors and their affiliates, (including, without limitation, any equitable subordination claims or defenses), with respect to or relating to the Prepetition Obligations, the Prepetition Liens, the Prepetition Collateral, the Prepetition Loan Documents, the Debtors' attempts to restructure the Prepetition Obligations, any and all claims and causes of action arising under the Bankruptcy Code and any and all claims regarding the validity, priority, enforceability, perfection or avoidability of the liens or claims of the Agent and Prepetition Secured Parties; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations, the Prepetition Liens and the Prepetition Loan Documents. | |
| **Cross-Collateralization**<br><br>Local Rule 4001-2(a)(i)(A) | The Proposed Interim Order does not provide for cross-collateralization, other than replacement liens as adequate protection. | N/A |
| **Liens on Chapter 5 Causes of Action**<br><br>Local Rule 4001-2(a)(i)(D) | Subject to and effective upon entry of the Final Order, the Adequate Protection Collateral shall also include, without limitation, the proceeds of any claims and causes of action of the Debtors arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (collectively, the "Avoidance Actions"); *provided*, *however*, that the Adequate Protection Collateral shall not include any Avoidance Actions of the Debtors | Proposed Interim Order at ¶ 5(a). |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>Local Rule 4001-2(a)(i)(E) | Not applicable. | N/A |
| **Disparate Treatment of Professionals** | The Proposed Interim Order contains no provision for disparate treatment for Committee professionals, if any, with respect to the Carve Out. | N/A |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Under Carve Out**<br><br>Local Rule 4001-2(a)(i)(F) | | |
| **Non-Consensual Priming Liens**<br><br>Local Rule 4001-2(a)(i)(G) | Not applicable. | N/A |
| **Waiver of 506(c) surcharge**<br>Local Rule 4001-2(a)(i)(V) | Upon entry of the Proposed Final Order, the Debtors will waive their rights under section 506(c) of the Bankruptcy Code. | Proposed Interim Order at ¶ 16. |
| **Waiver of "equities of the case" doctrine**<br>Local Rule 4001-2(a)(i)(W) | Upon entry of the Proposed Final Order, the Debtors will waive its rights to assert the "equities of the case" doctrine under section 552(b) of the Bankruptcy Code. | Proposed Interim Order at ¶ 17. |
| **Waiver of Marshalling**<br>Local Rule 4001-2(a)(i)(X) | Upon entry of the Proposed Final Order, the Debtors will waive the equitable doctrine of "marshalling" and similar equitable relief. | Proposed Interim Order at ¶ 19. |

## BASIS FOR RELIEF

### I.    The Debtors' Use of Cash Collateral and Prepetition Collateral Is Necessary

16.    Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Further, section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property;

(b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property.  11 U.S.C. § 361.

17.     It is well-established that a bankruptcy court should, whenever possible, resolve issues in favor of allowing a debtor to continue its business as a going concern.  Courts have recognized that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild.  Without the availability of cash to meet daily operating expenses . . . the congressional policy favoring rehabilitation over economic failure would be frustrated." *Chrysler Credit Corp. v. Ruggiere* (*In re George Ruggiere Chrysler-Plymouth, Inc.*), 727 F.2d 1017, 1019 (11th Cir. 1984); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.").

18.     Accordingly, courts regularly authorize the use of cash collateral to enhance or preserve the debtor's going concern value.  *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("[T]here is no question that the property would be improved by the proposed renovations and that an increase in value will result.  In effect, a substitution occurs in that the money spent for improvements will be transferred into value.  This value will serve as adequate protection for [the creditor's] secured claim.").

19.     It is essential to the Debtors' Store Closing Sales and chapter 11 efforts that they have sufficient funds to operate and maximize the value of their assets.  Absent the use of Cash Collateral and Prepetition Collateral, the Debtors will not have sufficient working capital to

fund the administrative costs of these chapter 11 cases.  The ability to satisfy these expenses when due is essential to avoid immediate and irreparable harm to the Debtors' estates.

20.    The cash received by the Debtors generated from the operation of their business in the ordinary course constitutes Cash Collateral.  The Debtors' use of the Cash Collateral and Prepetition Collateral is necessary to maintain and maximize the value of the Debtors' assets during the pendency of these chapter 11 cases.  To that end, the Debtors and the Prepetition Secured Parties have negotiated in good faith regarding the Proposed Interim Order to provide the Debtors with the consensual use of Cash Collateral.  Absent the use of Cash Collateral, the Debtors will be unable to operate their business in a manner necessary to maintain and maximize the value of their assets pending the conclusion of the Store Closing Sales.  Simply stated, without the use of the Cash Collateral and as requested by this Motion, the Debtors will suffer immediate and irreparable harm, their business operations will cease, and the maximum value of their assets will not be realized.

**II.     The Proposed Adequate Protection Is Reasonable and Appropriate**

21.    Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time.  *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining).  *In re May*, 169 B.R. 462 (Bankr. S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral).  *In re Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992) (same).  Even in those instances where its equity cushion is

fluctuating, a secured creditor is adequately protected so long as an adequate cushion remains over and above its secured claim. *Dynaco Corp.*, 162 B.R. at 394 (Bankr. D. N.H. 1993).

22. In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa.* (*In re Shaw Indus., Inc.*), 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988). The Third Circuit has held that adequacy, "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the priming lien granted to the new lender. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564 (quoting *In re Am. Mariner Inds., Inc.*, 734 F.2d 426, 432 (9th Cir. 1984)).

23. Nevertheless, adequate protection must be determined on a case-by-case basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period. *See In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge v. Production Credit Assoc. & Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

24.     As more fully set forth in the Proposed Interim Order, as adequate protection for the use of Cash Collateral and Prepetition Collateral, the Debtors propose providing the Prepetition Secured Parties with, among other things:  (a) perfected security interests, and replacement liens upon all Prepetition Collateral and Postpetition Collateral, for any diminution in value of the Prepetition Collateral, (b) an Allowed Bankruptcy Code § 507(b) claim; and (c) upon any sale or disposition of the assets, which sale or disposition having been for cash consideration, such use of cash consideration to be applied until the Pre-Petition ABL Facility has been paid in full pursuant to the Prepetition Loan Documents.  The terms and conditions on which the Debtors may use Cash Collateral and Prepetition Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code.  If the Proposed Interim Order is entered, the Debtors will have working capital to operate their business and thus, maximize the value of the assets for the benefit of their stakeholders.  At the same time, the Prepetition Secured Parties will be adequately protected in a manner that it has agreed to for consenting to the Debtors' use of Cash Collateral and Prepetition Collateral.  Therefore, the Debtors respectfully submit that the use of Cash Collateral and Prepetition Collateral on the terms set forth in the attached Proposed Interim Order provides the Prepetition Secured Parties with adequate protection and is in the best interest of the Debtors, their estates, their creditors, and all parties in interest and therefore should be authorized by the Court.

## III.    The Scope of the Proposed Carve-Out Is Reasonable and Appropriate

25.     The adequate protections are subject to the Carve-Out.  Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which such parties may be paid in these chapter 11 cases would be restricted.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts

insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers. Additionally, the Carve-Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that assets remain for payment of the Clerk of the Court, U.S. Trustee fees, and professional fees of the Debtors and any statutory committee.

## IV.      Interim Relief Should Be Granted

26.      Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Co. 1985), 47 B.R. at 449; *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bank S.D.N.Y. 1990) 115 B.R. at 38. After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g.*, *Simasko*, 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

27.      As set forth above, pending the Final Hearing, the Debtors require immediate access to Cash Collateral and Prepetition Collateral to satisfy the day-to-day needs of the Debtors' business operations. Access to liquidity will address any concerns regarding the Debtors' financial health and ability to continue operations, including the Store Closing Sales, in

light of these chapter 11 cases. The Debtors have an immediate need for liquidity to, among other things, maintain business relationships with their vendors and suppliers, pay payroll and certain benefits, and satisfy other essential working capital and operational needs, all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest. In addition, the Approved Budget establishes that the Debtors' use of Cash Collateral and Prepetition Collateral will not prejudice the Prepetition Secured Parties.

## V.      The Automatic Stay Should Be Modified on a Limited Basis

28.      The relief requested herein contemplates a modification of the automatic stay solely to permit the Prepetition Secured Parties to deliver written notice by electronic mail stating that the Prepetition Secured Parties elect to commence the exercise of rights and remedies with respect of the Proposed Interim Order and the Prepetition Loan Documents, and under applicable bankruptcy and non-bankruptcy law, including, without limitation, in respect of its Prepetition Collateral and its adequate protection of interests. Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtors' business judgment, are reasonable and fair under the circumstances.

## BANKRUPTCY RULE 4001(a)(3) SHOULD BE WAIVED

29.      The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As explained above and in the First Day Declaration, the use of Cash Collateral and Prepetition Collateral is essential to prevent irreparable damage to the Debtor's operations. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## IMMEDIATE RELIEF IS NECESSARY

30.     Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one (21) days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. As described above, without access to Cash Collateral and Prepetition Collateral, the Debtors would be unable to operate their business and fund these chapter 11 cases.

31.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied, and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

32.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Interim Order include a finding that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

33.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Interim Order.

## RESERVATION OF RIGHTS

34.     Nothing in the Proposed Orders or this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy

Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

## **NOTICE**

35.     Notice of this Motion has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for BMO Bank, N.A.; (iii) counsel for Hancock Whitney Bank; (iv) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (v) the Internal Revenue Service; (vi) the United States Attorneys' Office for the District of Delaware (vii) all other known parties with liens of record on assets of the Debtors as of the Petition Date; and (viii) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.


*[Remainder of Page Intentionally Left Blank]*

32185227.4

28

## **CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Orders granting the relief requested herein and such other and further relief as is just and proper.

<table>
<tr>
<td>Dated:</td>
<td>October 10, 2024<br>Wilmington, Delaware</td>
<td>YOUNG CONAWAY STARGATT & TAYLOR, LLP</td>
</tr>
</table>

*/s/ S. Alexander Faris*

Michael R. Nestor (No. 3526)
Andrew L. Magaziner (No. 5426)
S. Alexander Faris (No. 6278)
Kristin L. McElroy (No. 6871)
Andrew M. Lee (No. 7078)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email: mnestor@ycst.com
          amagaziner@ycst.com
          afaris@ycst.com
          kmcelroy@ycst.com
          alee@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HDC HOLDINGS II, LLC, *et al.*,[1] | Case No. 24-12307 (TMH) |
| Debtors. | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363;
(II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105(A), 361, 362, 363, 503 AND 507;
(III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY
RULE 4001(B); AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (these "Chapter 11 Cases") for entry of an interim order (this "Interim Order"), pursuant to sections 105(a), 361, 362, 363, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 2002-1, 4001-2 and 9013-1:

    (a)    authorizing the Debtors to continue to use Cash Collateral and all other Prepetition Collateral (each as defined below) in which any of the Prepetition Secured Parties (as defined below) have an interest in accordance with the terms and conditions of this Interim Order, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: HDC Holdings II, LLC (2013); HDC Holdings III, LLC (3296); CCM Capital Assets, LLC (9451); Channel Control Merchants, LLC (3319); Dirt Cheap I, LLC (9433); CCM Support Services, LLC (2059); CCM Wholesale SE, LLC (7219); Channel Control Merchants of Texas, LLC (8091); Creative Sales Solutions, LLC (1691); Dirt Cheap Arkansas, LLC (0244); Dirt Cheap Building Supplies, LLC (0880); Dirt Cheap of Georgia, LLC (0269); Dirt Cheap of Louisiana, LLC (0067); Dirt Cheap SE, LLC (4928); Dirt Cheap Tennessee, LLC (1273); Treasure Hunt, LLC (9393); CCM Wholesale, LLC (7219); Channel Control Merchants of California, LLC (9011); and CAL Support Services, LLC (2859). The Debtors' headquarters are located at 6892 US Hwy 49 North, Hattiesburg, Mississippi 39402.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

(b)     authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties to the extent of any diminution in value of their interest in the Prepetition Collateral, including Cash Collateral, under or in connection with the Prepetition Loan Documents (as defined below);

(d)     subject to certain challenge rights of certain parties in interest (but subject to the limitations specified herein), approving certain stipulations by the Debtors with respect to (i) the Credit Documents (as defined in the ABL Credit Agreement), (ii) the Security Documents (as defined in the ABL Credit Agreement); (iii) the ABL Guarantee (as defined below) and (iv) the liens and security interests arising therefrom (collectively (i) through (iv) are hereinafter defined as the "Prepetition Loan Documents");

(e)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(f)     subject only to and effective upon entry of the Final Order, waiving the Debtors' right to assert with respect to the Prepetition Collateral or the Adequate Protection Collateral (as defined below) (i) any claims to surcharge pursuant to section 506(c) of the Bankruptcy Code, (ii) any "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code, and (iii) the equitable doctrine of "marshalling" or any similar doctrine;

(g)     scheduling, pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(c), a final hearing (the "Final Hearing"), to be held within thirty (30) days of the entry of this Interim Order to consider entry of the Final Order approving the relief granted herein on a final basis;

(h)     waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order and, as later applicable, the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(i)     granting related relief;

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Standing Order"); and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Interim Hearing"); and all objections, if any, to the Motion having been withdrawn, resolved or overruled, including any raised at the Interim Hearing; and the relief requested in the Motion being in the best interests of the Debtors, their estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and raised at the Interim Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

A.    <u>Disposition</u>.  The relief requested in the Motion is granted on an interim basis in accordance with the terms of, and to the extent set forth in, this Interim Order.  Any and all objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or resolved, and all reservations of rights, are hereby denied and overruled on the merits, except as may be set forth herein.  This Interim Order shall become effective immediately upon its entry.

B.    <u>Petition Date</u>. On October 10, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.  On October 10, 2024, this Court entered an order approving the joint administration of these Chapter 11 Cases.  The Debtors are continuing to operate their business and manage their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

C.    <u>Jurisdiction</u>.  This Court has core jurisdiction over these Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Standing Order.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Notice</u>.  Under the circumstances of these Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion, the Interim Hearing and this Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

E.    <u>Debtors' Stipulations</u>.  In requesting use of Cash Collateral and other Prepetition Collateral, and in exchange for and as a material inducement to the Prepetition Secured Parties to permit consensual use of their Cash Collateral and other Prepetition Collateral, the Debtors acknowledge, represent, stipulate, and agree, subject to the challenge rights set forth in Paragraph 21 below (but subject to the limitations thereon contained herein), as follows (Paragraphs E(i) through E(xv) are collectively hereinafter defined as the "<u>Debtors' Stipulations</u>"):

(i)    HDC Holdings III, LLC ("<u>Borrower</u>") and HDC Holdings II, LLC ("<u>Holdings</u>") are parties to that certain Amended and Restated ABL Credit Agreement, dated as of April 21, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>ABL Credit Agreement</u>"), pursuant to which, among other things, BMO Bank N.A. (f/k/a BMO Harris Bank N.A.) ("<u>BMO</u>"), as Agent[3] and Lender (each as defined therein), together

---

[3] Pursuant to the ABL Credit Agreement, BMO serves as the Administrative Agent, the Collateral Agent and the Joint Lead Arrangers and Bookrunners (each as defined therein).

with the other Lenders[4] from time to time parties thereto, extended credit from time to time to Borrower in the form of Revolving Credit Loans (as defined therein) in the aggregate amount of up to $36,500,0000 for working capital and other general corporate purposes, comprised of (a) a first-in, last-out commitment from Hilco Trading in the amount of $5,000,000, (b) a $26,500,000 commitment from BMO, and (c) a $5,000,000 commitment from Hancock;

        (ii)    Holdings and each Guarantor (as defined therein)[5] are parties to that certain ABL Guarantee, dated as of July 19, 2017, in each case in favor of Agent, for the benefit of the Prepetition Secured Parties (as the same may be amended, restated, amended and restated, supplemented, reaffirmed or otherwise supplemented from time to time, the "ABL Guarantee"), which guaranties were issued to support, among other things, the transfers made by Borrower to the Guarantors in connection with the operation of the Guarantors' businesses;

        (iii)    Borrower, the Guarantors and Agent, for the benefit of the Prepetition Secured Parties, are parties to that certain ABL Security Agreement, dated as of July 19, 2017 (as the same may be amended, restated, amended and restated, supplemented, reaffirmed or otherwise modified from time to time, the ABL Security Agreement");

        (iv)    as of the Petition Date, the Debtors were liable to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents (a) in the aggregate principal amount of not less than $27,861,681.86[6] in respect of Revolving Credit Loans made to the Borrower and (b) for accrued and unpaid interest, fees, expenses (including advisors fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Loan Documents), disbursements,

---

[4] As of the Petition Date, the Lenders parties to the Prepetition Loan Documents are BMO, Hancock Whitney Bank ("Hancock") and Hilco Trading, LLC ("Hilco Trading", and, collectively, the "Prepetition Secured Parties")

[5] Each of the Guarantors and Borrower are Debtors in these Chapter 11 Cases.

[6] Amount in this paragraph is as of October 8, 2024.

charges, claims, indemnities and other costs and obligations of whatever nature incurred in connection therewith which are chargeable or otherwise reimbursable under the Prepetition Loan Documents or applicable law, whether arising before or after the Petition Date, including any "Obligations" (as defined in the Prepetition Loan Documents), of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition Loan Documents ((a) and (b) are collectively defined as the "Prepetition Obligations");

(v)      all of the Prepetition Obligations constitute the legal, valid, binding and unconditional obligations of the Debtors to the Prepetition Secured Parties, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(vi)      no portion of the Prepetition Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, avoidance, reduction, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, reduction, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross-claim, set-off, offset, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any kind or nature under the Bankruptcy Code or any other applicable law or regulation or otherwise and the Debtors do not possess, and shall not assert, any claim, counterclaim, setoff or defense of any kind, nature or description that would in any way affect the validity, enforceability and non-avoidability of any Prepetition Obligations;

32205020.7

6

(vii)    pursuant to and in connection with the Prepetition Loan Documents, each Debtor granted to BMO, in its capacity as Agent and for the benefit of the Prepetition Secured Parties, continuing, legal, valid, binding, properly perfected, enforceable, non-avoidable first priority liens on and security interests in (the "Prepetition Liens") all of the "Collateral" (as defined in the Prepetition Loan Documents) (the "Prepetition Collateral"), which Prepetition Liens (a) secure all of the Prepetition Obligations, (b) are not subject to any contest, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, reduction, attachment, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross-claim, set-off, offset, challenge, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any nature under the Bankruptcy Code or any other applicable law or regulation or otherwise, and (c) are and remain senior in priority over any and all other liens on and security interests in the Prepetition Collateral, subject only to valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent that such liens or security interests are senior to or *pari passu* with the Prepetition Liens (a "Permitted Encumbrance");

(viii)    the Prepetition Secured Parties duly perfected the Prepetition Liens in the Prepetition Collateral by, among other things, filing financing statements and, where necessary, possessing the relevant instruments, certificates, or other property;

(ix)    as of the Petition Date, other than as expressly permitted under the Prepetition Loan Documents, there were no liens on or security interests in the Prepetition Collateral that are senior to the Prepetition Liens;

(x)    the Debtors have waived, discharged and released any right they may have (a) to challenge the Prepetition Obligations, the Prepetition Loan Documents and the Prepetition

Liens on the Prepetition Collateral and (b) to assert any offsets, set-offs, recoupments, defenses, claims, objections, challenges of any kind, causes of action and/or choses of action against the Prepetition Secured Parties with respect to the Prepetition Obligations, the Prepetition Loan Documents, the Prepetition Liens or the Prepetition Collateral;

(xi)　　any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral, including the Cash Collateral, and/or (b) made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors;

(xii)　　all of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, to the extent Collateral (as defined in the Prepetition Loan Documents) or proceeds thereof, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Secured Parties;

(xiii)　　none of the Prepetition Secured Parties (including Agent, but excluding Hilco Trading) constitutes a control person or insider of the Debtors by virtue of any of the actions taken by any of them in respect of or in connection with (a) making the decision to consent to the use of Cash Collateral, (b) extending other financial accommodations to the Debtors under this Interim Order, (c) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents, (d) administering the loans and financial accommodations extended under the Prepetition Loan Documents, (e) extending other financial accommodations to the Debtors under the Prepetition Loan Documents, and (f) making the decision to collect the indebtedness and obligations of the Debtors, and the Prepetition Secured Parties (including Agent) shall not be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person or as an owner or operator under any applicable law;

(xiv)   the Debtors admit, stipulate, acknowledge and agree that the Prepetition Secured Parties may credit bid the full amount of (or any portion of) the Prepetition Obligations, subject to section 363(k) of the Bankruptcy Code; and

(xv)   the Prepetition Secured Parties are entitled, pursuant to sections 361, 362(c)(2), 363(e), 364(d)(l) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date in exchange for (a) the Debtors' use of Cash Collateral, (b) the subordination of the Prepetition Obligations to the Carve-Out (as defined below), and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

F.   Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Prepetition Secured Parties have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) and shall include, without limitation:

(i)   all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property, insurance policies, or in or on which the Prepetition Secured Parties have a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(ii)   all of the respective deposits, refund claims and rights in retainers of the Debtors on which the Prepetition Secured Parties have a lien or replacement lien, whether as part

32205020.7

9

of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

   (iii) the proceeds of any sale of Prepetition Collateral in connection with any sale consummated prior to entry of the Interim Order.

  G. <u>Findings Regarding the Prepetition Secured Parties' Consent to Use of Cash Collateral</u>. The Prepetition Secured Parties have consented to the adequate protection and the subordination of their liens and superpriority claims to the Carve-Out expressly provided for in this Interim Order; <u>provided</u>, <u>however</u>, that the respective consents of the Prepetition Secured Parties to subordinate their liens and superpriority claims to the Carve-Out, the use of the Prepetition Collateral (including Cash Collateral), and the sufficiency of the respective adequate protection provided for herein are expressly conditioned upon the entry of this Interim Order (as consented to by the Prepetition Secured Parties); <u>provided</u>, <u>further</u>, that such consents shall be of no further force and effect in the event this Interim Order is not entered (or is entered and subsequently vacated).

  H. <u>Necessity of Relief Requested</u>.  The Debtors have an immediate and critical need to continue to use the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly liquidation of their operations, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs, in each such case in accordance with the terms of this Interim Order, including in accordance with the Budget (as defined below).  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary to preserve and maximize the value of the Debtors' estates.  Without the use of Cash Collateral, the Debtors would likely not have sufficient liquidity to

continue to operate their organization.  Entry of this Interim Order will preserve the assets of each Debtor's estate and its value and is in the best interests of the Debtors, their creditors and their estates.  The Adequate Protection Liens, the Adequate Protection Superpriority Claims and the Adequate Protection Payments (each as defined below) provided herein are consistent with and authorized by the Bankruptcy Code.  Absent authorization to immediately access and use Cash Collateral, the Debtors, the estates and their creditors would suffer immediate and irreparable harm.

I.      Sections 506(c) and 552(b) Waivers.  In light of (i) the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, (ii) the Prepetition Secured Parties' consent to use of their Cash Collateral, and (iii) the Budget covering administrative costs projected by the Debtors, the Prepetition Secured Parties are entitled to, subject only to and effective upon entry of a Final Order, a waiver of (a) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, (b) the provisions of section 506(c) of the Bankruptcy Code, and (c) the equitable doctrine of "marshalling" or any similar doctrine.

J.      Exercise of Debtors' Business Judgment.  Based on the Motion, the First Day Declaration and the record presented to the Court at the Interim Hearing, the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

K.      Final Hearing.  At the Final Hearing, the Debtors will seek final approval of the relief requested in the Motion on a final basis pursuant to the Final Order, notice of which Final Hearing will be provided in accordance with this Interim Order.

L.      <u>Immediate and Irreparable Harm</u>.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. Absent granting the relief set forth in this Interim Order, the Debtors and their estates will be immediately and irreparably harmed.  Entry of this Interim Order and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order are in the best interests of the Debtors, their estates and their creditors.  The terms of this Interim Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with fiduciary duties and are supported by reasonably equivalent value and fair consideration.

Based on the foregoing, the Motion, the First Day Declaration and the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      <u>Motion Granted</u>.  The Motion is GRANTED, and the Debtors' use of Cash Collateral and other Prepetition Collateral on an interim basis is authorized, subject to the terms and conditions of this Interim Order.

2.      <u>Authorization to Use Cash Collateral</u>.  The Debtors are hereby authorized, subject to the terms and conditions of this Interim Order and compliance with the Budget, to use Cash Collateral; <u>provided</u> that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms, conditions and limitations of this Interim Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of this Court.

3.      <u>Budget</u>.  The Debtors and the Prepetition Secured Parties have agreed to an initial budget attached hereto as **Exhibit 1**, including a 13-week cash flow forecast setting forth all

projected cash receipts and cash disbursements on a weekly basis (the "Budget"). The Budget includes and contains the Debtors' reasonable estimate of all operational receipts and all operational disbursements, fees, costs, and other expenses that will be payable, incurred, and/or accrued by any of the Debtors during the period covered by the Budget. The Debtors' use of Cash Collateral is subject to and governed by the terms of the Budget and this Interim Order, and subject to a further order of this Court, the Agent (on behalf of the Prepetition Secured Parties) shall have no obligation to permit the use of Cash Collateral and the Debtors shall have no authority to use Cash Collateral other than in accordance with the Budget, subject to the Permitted Variance or Cumulative Permitted Variance (each as defined below) and as set forth in this Interim Order. The Prepetition Secured Parties (a) may assume the Debtors will comply with the Budget, (b) shall have no duty to monitor such compliance and (c) shall not be obligated to pay (directly or indirectly from the Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget, except the Carve-Out to the extent permitted in this Interim Order.

4.      Permitted Variances. Notwithstanding the Budget, so long as no Event of Default (as defined below) has occurred, the Debtors are authorized to use Cash Collateral in in accordance with the Budget subject to: (a) a permitted variance that would not cause (i) the total operating disbursements of the Debtors for the immediately preceding two (2) weeks to be greater than one-hundred ten percent (110%) of the then current Budget over the corresponding time period, and (ii) the aggregate of all actual cash receipts of the Debtors for the immediately preceding two (2) weeks to be less than ninety percent (90%) of the then current Budget over the corresponding time period, each first measured on the second Monday immediately following the entry of this Interim Order, and then weekly on a rolling basis thereafter (each such variance representing a "Permitted Variance"); and (b) a cumulative permitted variance that would not cause (i) the total operating

disbursements of the Debtors for the immediate four (4) weeks after the entry of this Interim Order to be greater than one-hundred five percent (105%) of the then current Budget over the corresponding time period, and (ii) the aggregate of all actual cash receipts of the Debtors for the four (4) weeks after entry of this Interim Order to be less than ninety-five percent (95%) of the then current Budget over the corresponding time period, each first measured on the Friday immediately following the entry of this Interim Order, and then (iii) weekly on a rolling basis thereafter, aggregating to the entry of this Interim Order over the corresponding time period (each such cumulative variance representing a "Cumulative Permitted Variance").

     5.     Adequate Protection of Prepetition Secured Parties.  Pursuant to sections 361, 362, 363(c)(2), 363(e) and 507 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate actual diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Debtors (or other decline on value) of the Prepetition Collateral (including Cash Collateral, whether pursuant to the Budget or otherwise), the subordination of their liens on the Prepetition Collateral and superpriority claims to the Carve-Out pursuant to this Interim Order and the Prepetition Loan Documents, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each, an "Adequate Protection Claim").  As adequate protection of the Adequate Protection Claim(s), the Prepetition Secured Parties are hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)      *Adequate Protection Liens.*  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection against any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, effective as of the Petition Date and perfected without the need for execution by the Debtors or the recordation or other filing by the Prepetition Secured Parties of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Agent of any Adequate Protection Collateral (as defined below), the Agent is hereby granted, for the benefit of the Prepetition Secured Parties, solely to the extent of any actual diminution in value of the Prepetition Collateral and as security for the payment of the Adequate Protection Claim(s), valid, binding, continuing, enforceable, fully perfected, first priority senior replacement liens on and security interests in (collectively, the "Adequate Protection Liens") any and all tangible and intangible pre- and post-petition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (collectively, the "Adequate Protection Collateral").  Subject to and effective upon entry of the Final Order, the Adequate Protection Collateral shall also include, without limitation, the proceeds of any claims and causes of action of the Debtors arising under sections 502(d), 542, 544, 545,

547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (collectively, the "Avoidance Actions"); *provided*, *however*, that the Adequate Protection Collateral shall not include any Avoidance Actions of the Debtors.

(b)     The Adequate Protection Liens shall be junior only to (i) the Carve-Out and (ii) any Permitted Encumbrance.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on or claims against any of the Adequate Protection Collateral.

(c)     The Adequate Protection Liens shall not be subject to sections 506(c) (upon entry of the Final Order), 510, 549, 550 or 551 of the Bankruptcy Code.  The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (each a "Successor Case").

(d)     *Adequate Protection Superpriority Claims*.  The Adequate Protection Claims due to the Agent shall constitute allowed superpriority administrative expense claims against the Debtors and their estates in the amount of any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, 1114 and any other provision of the Bankruptcy Code,

and shall at all times be senior to the rights of the Debtors and any successor trustee or creditor in these Chapter 11 Cases or any Successor Case (the "Adequate Protection Superpriority Claims"), subject and subordinate only to the Carve-Out and fees payable under 28 U.S.C. § 1930.

(e)     *Payment of Prepetition and Postpetition Interest*.  The Debtors shall pay to the Agent, for the benefit of the Prepetition Secured Parties, all accrued and unpaid interest (including, for the avoidance of doubt, interest accruing and becoming due after the Petition Date) at the applicable rates under, and consistent with the ordinary course interest payment dates set forth in, the Prepetition Loan Documents (the "Adequate Protection Interest Payments").

(f)     *Agent Fees and Expenses*.  As additional adequate protection, the Agent shall receive from the Debtors, for the benefit of the Prepetition Secured Parties, current cash payments of all reasonable and documented prepetition and postpetition fees and expenses payable to the Agent, on behalf of the Prepetition Secured Parties, under the Prepetition Loan Documents, including, but not limited to, the reasonable and documented prepetition and postpetition fees and disbursements of legal counsel, financial advisors and other consultants (the "Adequate Protection Fees and Expenses", and together with the Adequate Protection Interest Payments, the "Adequate Protection Payments").  Payment of all such Adequate Protection Fees and Expenses shall not be subject to allowance by the Court but shall be subject to the following process.  At the same time invoices are delivered to the Debtors, the professionals for the Prepetition Secured Parties shall deliver a copy of their respective invoices to (i) counsel for any official committee appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee") and (ii) the office of the United States Trustee (the "U.S. Trustee").  The invoices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only,

and shall not be subject to application or allowance by this Court.  Any objections raised by the

Debtors, the U.S. Trustee or the Creditors' Committee with respect to such invoices within ten

(10) business days of receipt thereof will be resolved by the Court if necessary (absent prior

consensual resolution thereof).  Pending such resolution, the undisputed portion of any such

invoice shall be promptly paid by the Debtors.  Except as otherwise ordered by the Court in the

event an objection is timely filed, such Adequate Protection Fees and Expenses shall not be subject

to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

6.      Reporting.  The Debtors shall comply with the reporting requirements set forth in

the Prepetition Loan Documents (as may be modified in writing by the Agent from time to time),

and the Debtors shall provide the following additional reporting, which shall be delivered to the

Agent on behalf of the Prepetition Secured Parties:

(a)      A Weekly Borrowing Base Certificate (as defined in the ABL Credit

Agreement) on Wednesday of each week, as of the close of business on the immediately preceding

Friday;

(b)      On or before four (4) weeks following the Petition Date, and every four

(4) weeks thereafter, an updated Budget (which shall include the prior 2 weeks of actual results)

(the "Proposed Budget") with respect to the Debtors for the current calendar week then ended and

the remaining 13 weeks of the current Budget, set forth on a weekly basis.  Each Proposed Budget

provided to the Agent, on behalf of the Prepetition Secured Parties, shall be of no force and effect

unless and until it is approved in writing by the Agent for the benefit of the Prepetition Secured

Parties, such approval not to be unreasonably withheld, and, until such approval is given, the prior

Budget shall remain in effect.  Each Proposed Budget shall become the Budget five (5) days after

delivery by the Debtors to the Agent, on behalf of the Prepetition Secured Parties, if approved in

accordance with the foregoing (and the Prepetition Secured Parties shall be deemed to have approved the Proposed Budget upon the passage of five (5) days with no objection by either such party). Any such Proposed Budget, upon such approval, shall become, as of the date of such approval and for the period of time covered thereby, the Budget, and shall prospectively replace any prior Budget;

(c)     on a weekly basis, starting October 24, 2024, a report (each a "Variance Report"), in each case certified by the "Chief Restructuring Officer," reflecting, on a line-item basis, the actual cash disbursements and receipts for the preceding week and the percentage variance of such actual cash disbursements and receipts from those reflected in the Budget for such period; and for the avoidance of doubt the first Variance Reporting will be measured on October 28, 2024 and delivered to the Agent in accordance herewith;

(d)     all financial reports, forecasts and all other financial documentation, pleadings and other filings that are reasonably requested by the Agent, on behalf of the Prepetition Secured Parties;

(e)     all such information that is afforded to the Creditors' Committee and/or the Creditors' Committee's respective legal or financial advisors; and

(f)     in addition to, and without limiting, whatever rights to access the Agent and the Prepetition Secured Parties have under the Prepetition Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall (a) permit representatives of the Agent and the Prepetition Secured Parties to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and (b) cause their representatives and

agents to make themselves reasonably available to discuss the Debtors' affairs, financial condition, properties, business, operations and accounts with the representatives and legal and financial of the Prepetition Secured Parties.

7.    <u>Cash Management</u>.  The Debtors are authorized and directed to maintain their cash management system in a manner consistent with this Interim Order and any order of this Court approving the maintenance of the Debtors' cash management system.

8.    <u>Excess Availability</u>.  The Debtors will not permit Excess Availability to be less than $6,151,000. For purposes of this section, "Excess Availability" shall mean (a) the sum, without duplication, of (i) the Maximum Borrowing Amount (as defined in the ABL Credit Agreement) <u>plus</u> (ii) Qualified Cash (as defined in the ABL Credit Agreement) at such time in an aggregate amount not to exceed then (10%) percent of the Borrowing Base in effect at such time, <u>minus</u> (b) the aggregate Revolving Credit Exposures (as defined in the ABL Credit Agreement) (including the Letter of Credit Exposure (as defined in the ABL Credit Agreement)) of all Lenders (as defined in the ABL Credit Agreement) at such time.

9.    <u>Requests for Further Adequate Protection</u>.  Nothing in this Interim Order shall be deemed to limit, abridge, waive or otherwise affect (a) any right of the Prepetition Secured Parties to request at any time that the Court provide different, additional or further adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) or to seek different, additional, or further adequate protection in the event the Prepetition Secured Parties contend that the adequate protection provided herein is inadequate or (b) the ability of the Debtors or any other party in interest to oppose any such relief.

10.    <u>Continuation of Prepetition Liens</u>. Subject to the Challenge Rights set forth in Paragraph 21, until the Debtors have indefeasibly paid in full in cash all Prepetition Obligations

32205020.7

all liens and security interests of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens) shall remain valid and enforceable with the same continuing priority as described herein.

11.     <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition Secured Parties may request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Secured Parties under this Interim Order; (d) authorize the Debtors to pay, and the Prepetition Secured Parties to retain and apply, any payments (including the Adequate Protection Payments) made in accordance with the terms of this Interim Order and the Prepetition Loan Documents; and (e) permit the Prepetition Secured Parties to exercise all rights and remedies provided for hereunder and under the Prepetition Loan Documents.

12.     <u>Perfection of Adequate Protection Liens</u>.

(a)     The Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Adequate Protection Liens.  Whether or not the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments, or take possession of or control over any cash, securities or any other property of the Debtors, or take any action that otherwise

may be required under federal, state or local law in any jurisdiction to validate and perfect a security interest or lien, in any such case, the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Interim Order), at the time and on the date of entry of this Interim Order or thereafter.  Upon the reasonable request of any of the Prepetition Secured Parties, the Prepetition Secured Parties (at the Debtors' cost and expense) and the Debtors, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Prepetition Secured Parties to further validate, perfect, preserve and enforce the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Interim Order (or the notice of the filing hereof) may, in the discretion of the Agent or the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or *in lieu* of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order or notice for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Agent and the Prepetition Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

13.     Termination of Cash Collateral Authorization.  Subject to any applicable cure or any notice period set forth below, if any, the Debtors' right to use Cash Collateral shall terminate (each of the following, an "Event of Default," and the date of any such Event of Default, the "Termination Date"), without prior order of this Court or any further action by the Agent and the

Prepetition Secured Parties, unless such Event of Default is waived by the Agent in writing, on the earliest to occur of:

(a)     the effective date of a confirmed plan in these Chapter 11 Cases;

(b)     the failure to meet or satisfy any of the following milestones (the "Case Milestones"):

(1)     thirty-five (35) days after the entry of this Interim Order if the Final Order has not yet been entered; and

(2)     completion of all of the Debtors' Store Closing Sales on or before December 31, 2024;

(c)     the date the Debtors file or otherwise support any plan of reorganization, plan of liquidation, motion or other pleading to sell all or substantially all of the Debtors' assets, without the prior written consent of the Agent on behalf of the Prepetition Secured Parties;

(d)     five (5) business days after the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment, or order enjoining the consummation of or rendering illegal the plan and either (i) such ruling, judgment, or order has been issued at the request of or with the acquiescence of the Debtors or (ii) in all other circumstances, such ruling, judgment, or order has not been stayed, reversed, or vacated within thirty (30) days after such issuance;

(e)     any Debtor's failure to comply with any of the material terms or conditions of this Interim Order, including, but not limited to, (a) the use of Cash Collateral for any purpose other than as permitted in this Interim Order, or (b) failure to comply with the Budget (including any distributions in excess of the Permitted Variance and Cumulative Permitted Variance that has not been resolved and approved, in writing, by the Agent);

(f)     the failure of the Debtors to make any payment under this Interim Order to the Agent within ten (10) business days after such payment becomes due (other than payments

32205020.7

required under Paragraph 5(f) of this Interim Order, which payments shall be made as required therein);

(g)     the date of the Debtors' filing an application, motion or other pleading seeing to amend, modify, supplement, or extend this Interim Order without the prior written consent of the Prepetition Secured Parties;

(h)     this Interim Order ceases, for any reason (other than by reason of the express written agreement by the Prepetition Secured Parties or the superseding of this Interim Order by the Final Order), to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by this Interim Order cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing;

(i)     the Court shall have entered an order reversing, amending, supplementing, staying, vacating, or otherwise modifying this Interim Order in a manner materially adverse to the Prepetition Secured Parties without the written consent of the Agent on behalf of the Prepetition Secured Parties;

(j)     the date of an application, motion, or other pleading is filed by the Debtors for the approval of any superpriority claim or any lien in these Chapter 11 Cases that is *pari passu* with or senior to the Adequate Protection Superpriority Claims or the Adequate Protection Liens without the prior written consent of the Prepetition Secured Parties;

(k)     the date any of the Debtors files any pleading or commences any action against the Prepetition Secured Parties challenging the validity or enforceability of the Prepetition Obligations, the Prepetition Loan Documents or the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition

Secured Parties arising under or related to the Prepetition Obligations or the Prepetition Loan Documents;

(l)     the date (i) any court enters an order dismissing any of these Chapter 11 Cases, converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, appointing a trustee, responsible officer, or examiner with expanded powers relating to the operation of these Chapter 11 Cases or terminating the Debtors' exclusivity under Bankruptcy Code section 1121, unless consented to in writing by the Agent on behalf of the Prepetition Secured Parties, or (ii) the Debtors apply for, consent to, acquiesce in any such dismissal, conversion, or appointment; and

(m)     the filing of any pleading by any Debtor in support of (in any such case by way of any motion or other pleading filed with the Court or any other writing to another party in interest executed by or on behalf of any such Debtor) any other person's opposition to any motion filed in the Court by the Agent or any of the Prepetition Secured Parties seeking confirmation of the amount of their claims, including the Prepetition Obligations, or the validity or enforceability of the Prepetition Liens or the Adequate Protection Liens.

14.     <u>Rights and Remedies upon the Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of Bankruptcy Code section 362, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, the Agent may provide notice (such notice, a "<u>Termination Notice</u>") that (a) any Adequate Protection Obligations determined to be due and owing as of the delivery of the Termination Notice, if any, shall become due and payable, (b) the application of the Carve-Out has occurred through the delivery of the Carve-Out Trigger Notice (as defined below), and/or (c) interest shall accrue at the default rate set forth in the Prepetition

Loan Documents.  Unless otherwise ordered by this Court, the automatic stay in these Chapter 11

Cases otherwise applicable to the Prepetition Secured Parties is hereby modified so that five (5)

business days after the date a Termination Notice is delivered (the "Remedies Notice Period"), the

Agent and/or the Prepetition Secured Parties shall be entitled to exercise their rights and remedies

to the extent available in accordance with the applicable Prepetition Loan Documents, this Interim

Order, or applicable law with respect to the Debtors' use of Cash Collateral, including setting-off

amounts in any account of the Debtors maintained with the Agent or the Prepetition Secured

Parties or with respect to which the Agent controls pursuant to a deposit account control agreement

or otherwise to the extent necessary for payment of the Adequate Protection Obligations or the

making of the Adequate Protection Payments.  During the Remedies Notice Period, the Debtors,

any Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency

hearing within the Remedies Notice Period with the Court; provided, however, that to the extent

that the Debtors or any Creditors' Committee seek an emergency hearing for a purpose other than

contesting whether an Event of Default has occurred or is continuing or for the contested use of

Cash Collateral, the professional fees and expenses incurred by the Debtors or the Creditors'

Committee shall not be paid from Cash Collateral or otherwise be a part of the Carve-Out.  Except

as set forth in this paragraph or otherwise ordered by the Court prior to the expiration of the

Remedies Notice Period, after the Remedies Notice Period the Debtors shall waive their right to

and shall not be entitled to seek relief, including, without limitation, under Bankruptcy Code

section 105, to the extent such relief would in any way impair or restrict the rights and remedies

of the Agent and/or the Prepetition Secured Parties under this Interim Order.  Unless the Court

orders otherwise, the automatic stay, as to the Prepetition Secured Parties (solely with respect to

the use of Cash Collateral to the extent permitted hereunder), shall automatically be terminated at

the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the Agent and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the Prepetition Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Interim Order; provided, that the Prepetition Secured Parties shall be permitted to exercise remedies to the extent available solely with respect to the Debtors' use of Cash Collateral. Notwithstanding anything to the contrary herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to an Event of Default, the delivery of a Termination Notice or the expiration of the Remedies Notice Period, all of the rights, remedies, benefits and protections provided to the Agent and the Prepetition Secured Parties under this Interim Order shall survive.  Neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any rights, benefits, privileges and remedies set forth in this paragraph.

15.    Carve-Out.  Subject to the terms and conditions contained in this paragraph, each of the Prepetition Liens, Adequate Protection Liens and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below) solely to the extent that a Carve-Out Trigger Notice (as defined below) is delivered.

(a)    As used in this Interim Order, the "Carve-Out" means the sum of:  (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to and in the aggregate of $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below) or 1104(a); (iii) solely to the extent allowed by order of the Court, whether

32205020.7

by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs, and expenses accrued or incurred by persons or firms formally retained by the Debtors or any Creditors' Committee (collectively, the "Carveout Professionals") whose retention is approved on a final basis by this Court pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (collectively, the "Allowed Professional Fees") at any time before delivery by the Agent of a Carve-Out Trigger Notice (as defined below) (or thereafter if the application to retain such Carveout Professional was pending as of the date of delivery of a Carve-Out Trigger Notice), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice and, with respect to Allowed Professional Fees payable to Carveout Professionals; and (iv)  Allowed Professional Fees in an aggregate amount not to exceed $250,000 incurred the first day following delivery by the Agent of the Carve-Out Trigger Notice (the amount set forth in this clause (iv) being the "Carve-Out Trigger Notice Cap"); provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, costs, disbursements, reimbursements or compensation described in clauses (i) through (iv) above on any grounds.

(b)      On a weekly basis, the fees and expenses of the Carve-Out Professionals shall be funded into an escrow account with Young Conaway Stargatt & Taylor, LLP to satisfy the funding of the Carveout pursuant to the Budget (the "Carve-Out Professional Fee Reserve"). The funds on deposit in the Carve-Out Professional Fee Reserve shall be payable to the Carve-Out Professionals solely when such Allowed Professional Fees are approved by (and pursuant to) an order of this Court; provided, however, for the avoidance of doubt, the Carveout Professionals shall retain the ability to apply any excess funds allocated to such Carveout Professional in the Carve-Out Professional Fee Reserve in one week to another week.

32205020.7

(c)    For purposes hereof, "Carve-Out Trigger Notice" shall mean a written notice delivered by email by the Agent, for the benefit of the Prepetition Secured Parties, to the Debtors, the Debtors' counsel, the U.S. Trustee and counsel to any Creditors' Committee, which notice may be delivered only upon the occurrence and during the continuation of an Event of Default, stating expressly that the Carve-Out Trigger Notice Cap has been invoked.

(d)    On the day on which the Carve-Out Trigger Notice is delivered to the Debtors (the "Carve-Out Trigger Date"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to pay into the Carve-Out Professional Fee Reserve an amount equal to the then-unpaid and/or unfunded amounts of Allowed Professional Fees that have accrued in accordance with the Budget, subject to the Carve-Out Trigger Notice Cap.

(e)    On the Carve-Out Trigger Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtors, after funding of the Carve-Out Professional Fee Reserve, to fund a reserve (the "Carve-Out Trigger Notice Cap Reserve," and, together with the Carve-Out Professional Fee Reserve, the "Carve-Out Reserves") in an amount equal to the amounts set forth in clauses (i) (to the extent not previously paid), (ii) and (iv) of the definition of Carve-Out in Paragraph 15(a) above (the "Carve-Out Amounts").  All funds in the Carve-Out Trigger Notice Cap Reserve shall be first used only to pay the allowed obligations set forth in clauses (i) (to the extent not previously paid), (ii), and (iv) of the definition of Carve-Out in Paragraph 15(a) above until paid in full, and then, to the extent the Carve-Out Professional Fee Reserve has not been reduced to zero, to pay the Agent for the benefit of the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date.  All funds in the Carve-Out Professional Fee

Reserve shall be used to pay the Allowed Professional Fees until paid in full, and then, to the extent the Carve-Out Professional Fee Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in this Interim Order, the Agent shall have a security interest in and lien on any residual interest in the Carve-Out Reserves, with any such funds paid to the Agent for the benefit of the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date.

(f)     After the delivery to the Debtors of a Carve-Out Trigger Notice, any payment or reimbursement made on or in respect of any Allowed Professional Fees (excluding any incurred and unpaid Adequate Protection Fees and Expenses of the Agent and the Prepetition Secured Parties) shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(g)     Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims granted under this Interim Order, including the Adequate Protection Liens, the Adequate Protection Superpriority Claims and any and all other liens or claims securing the Prepetition Obligations.

(h)     None of the Prepetition Secured Parties (including the Agent) shall be responsible for the direct payment or reimbursement of any fees or disbursements (including, without limitation, the Allowed Professional Fees) of any retained professionals, any Creditors' Committee, the U.S. Trustee, or the Clerk of this Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any Successor Case (including, without limitation, the Carve-Out Professionals), and nothing in this Interim Order or otherwise shall be construed to obligate any such parties in any way to (i) pay such compensation to or to reimburse such expenses or (ii) assure that the Debtors have sufficient funds on hand to pay any of the foregoing.

32205020.7

16.    <u>Limitation on Charging Expenses against Collateral</u>.  Nothing contained in this Interim Order shall be deemed a consent by the Agent or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Prepetition Collateral, the Adequate Protection Collateral or otherwise.  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the Agent, the Prepetition Secured Parties, any of the Prepetition Obligations, the Prepetition Collateral or the Adequate Protection Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the Prepetition Secured Parties.  No action, inaction or acquiescence by the Agent or the Prepetition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Agent, the Prepetition Secured Parties, the Prepetition Obligations, the Prepetition Liens, the Prepetition Collateral, the Adequate Protection Obligations, the Adequate Protection Collateral or the Adequate Protection Liens.

17.    <u>Equities of the Case Waiver</u>.  Subject only to and effective upon entry of the Final Order, the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

18.    <u>Payments Free and Clear</u>.  In the event of any sale, lease, transfer, license, or other disposition of property of the Debtors that constitutes Prepetition Collateral, the Debtors are authorized to pay the proceeds to the Agent (for the benefit of the Prepetition Secured Parties)

without further order of this Court up to the full amount of the Prepetition Obligations. Any and all proceeds remitted, subject only to the Carve-Out and any Challenge Proceeding (as defined below), to the Agent (for the benefit of the Prepetition Secured Parties) pursuant to the terms of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including (but subject only to and effective upon the entry of the Final Order) any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

19.     No Marshaling.  Subject only to and effective upon entry of the Final Order, the Agent and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, and proceeds of the Prepetition Collateral shall be received and applied pursuant to this Interim Order and the Prepetition Loan Documents notwithstanding any other agreement or provision to the contrary.  Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Prepetition Collateral after an Event of Default.

20.     Effect of Debtors' Stipulations.  Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph E of this Interim Order, shall be binding upon each of the Debtors and any successor(s) thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in these Chapter 11 Cases or any Successor Case) under all circumstances and for all purposes upon entry of this Interim Order.

21.    <u>Challenge Rights</u>.  Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph E of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including a Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in these Chapter 11 Cases or any Successor Case, in all circumstances and for all purposes unless:  (a) such Creditors' Committee or any other party in interest, in each case with requisite standing, has filed (subject to the limitations contained herein, including, inter alia, in this Paragraph 21), by no later than a date that is the later of (i) in the case of a party in interest with requisite standing, including any Creditors' Committee, seventy-five (75) calendar days after entry of this Interim Order, (ii) with respect to any Challenge Proceeding against the Agent and/or any of the Prepetition Secured Parties, any such later date agreed to in writing by the Agent, for the benefit of the Prepetition Secured Parties, in its sole discretion; or (iii) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard, provided that such order is entered before the expiration of any applicable period as set forth in clauses (i) through (iii) of this sentence (the "<u>Challenge Period</u>"), a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code), (A) contesting, objecting or otherwise challenging the admissions, stipulations, findings or releases included in the Debtors' Stipulations and this Interim Order, (B) contesting, objecting or otherwise challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), (C) contesting, objecting or

otherwise challenging the right of the Prepetition Secured Parties to credit bid on the Prepetition

Collateral pursuant to 363(k) of the Bankruptcy Code, or (D) otherwise asserting or prosecuting

any action for preferences, fraudulent transfers or conveyances, other avoidance power claims

(whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) or any other claims,

counterclaims or causes of action, objections, contests, defenses, setoffs, offsets or recoupments,

whether arising at law or equity, against the Prepetition Secured Parties or their respective officers,

directors, managers, principals, employees, agents, financial advisors, attorneys, accountants,

investment bankers, consultants, representatives and other professionals and the respective

successors and assigns thereof, in each case solely in their respective capacities as such

(collectively, the "Representatives"), and solely in their capacities as Representatives of the

Prepetition Secured Parties, in connection with (1) the prepetition business relationship between

or conduct of the Prepetition Secured Parties with the Debtors, (2) the actions or inactions of the

Prepetition Secured Parties arising out of or related to the Prepetition Obligations or otherwise,

including, without limitation, any claim against the Prepetition Secured Parties in the nature of an

"equitable subordination," "lender liability," "deepening insolvency" or "control person" liability,

or (3) matters related to the Prepetition Loan Documents, the Prepetition Obligations, the

Prepetition Liens and the Prepetition Collateral ((A), (B), (C), and (D) collectively, a "Challenge

Proceeding"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such

timely filed Challenge Proceeding.  The Prepetition Secured Parties stipulate and agree that each

of the Prepetition Secured Parties will not raise as a defense in connection with any Challenge

Proceeding the ability of creditors to file derivative suits on behalf of limited liability companies

under the Delaware Limited Liability Company Act.

22.     If no such Challenge Proceeding is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then:  (a) the Debtors' Stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph E of this Interim Order, shall be binding on all parties in interest, including, without limitation, any Creditors' Committee or any trustee appointed in these Chapter 11 Cases or any Successor Case; (b) the obligations of the Debtors under the Prepetition Loan Documents, including the Prepetition Obligations, shall constitute fully allowed secured claims within the meaning of Section 506 of the Bankruptcy Code not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases and any Successor Case; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Obligations, the Prepetition Collateral and the Prepetition Liens (including all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, the Prepetition Loan Documents or this Interim Order or otherwise, whether made prior to, on, or after the Petition Date) shall not be subject to any other or further claim or challenge by any Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by any Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against the Agent, the Prepetition Secured Parties and their Representatives arising out of or relating to the Prepetition Loan Documents shall be deemed forever waived, released and barred.

23.     If any such Challenge Proceeding is timely filed during the Challenge Period, (a) any claim or action that is not brought shall forever be barred, and (b) each of the Debtors' Stipulations and each of the Debtors' other admissions and agreements contained in this Interim Order, including, without limitation, those contained in Paragraph E of this Interim Order, shall nonetheless remain binding and preclusive on any Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, and agreements were successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Creditors' Committee or any non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Collateral or the Prepetition Liens.

24.     <u>Restriction on Use of Cash Collateral</u>.  Notwithstanding anything herein or in any other order by this Court to the contrary, no Cash Collateral, other Prepetition Collateral, proceeds, products, or offspring of any of the foregoing or any portion of the Carve-Out may be used (except to the extent otherwise expressly agreed in writing by the Agent, on behalf of the Prepetition Secured parties, in response to a written request from the Debtors specifying the proposed use) to pay any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee (including any Creditors' Committee), any trustee appointed under these Chapter 11 Cases or any Successor Case, or any other person, party, or entity (or to pay any professional fees and disbursements in connection therewith) to: (a) apply to the Bankruptcy Court for authority to approve superpriority claims or grant liens or security

interests in the Prepetition Collateral, including the Cash Collateral, or any portion thereof, that are senior to, or on parity with, the Prepetition Liens, unless the Prepetition Obligations and claims granted to the Prepetition Secured Parties under this Interim Order, as applicable, have been refinanced or indefeasibly paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the Agent, on behalf of the Prepetition Secured Parties; (b) to prevent, hinder or otherwise delay the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral, including Cash Collateral, and liens, claims and rights granted to the Prepetition Secured Parties under this Interim Order in accordance with the Prepetition Loan Documents or this Interim Order; (c) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties under this Interim Order or the Prepetition Loan Documents; (d) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are expressly provided for in the Budget and approved by an order of this Court that is in form and substance satisfactory to the Agent; (e) investigate, assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against the Agent or the Prepetition Secured Parties or their Representatives with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code, (ii) any action relating to any act, omission or aspect of the relationship between the Agent and/or the Prepetition Secured Parties, on the one hand, and the Debtors or any of their affiliates, on the other hand, (iii) any action with respect to the validity, extent and/or priority of the Prepetition Obligations, the Prepetition Liens and/or the Adequate Protection Obligations, (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition

Liens, the Adequate Protection Liens and/or Adequate Protection Obligations granted under this Interim Order, (v) except to contest the occurrence of any Event of Default as permitted in Paragraph 13, any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Agent and/or the Prepetition Secured Parties in respect of their liens and security interests in the Cash Collateral or the other Prepetition Collateral, (vi) pay any fees or similar amounts to any person to purchase the Prepetition Secured Parties' interests in any of the Debtors without the prior written consent of the Prepetition Secured Parties, unless such person consummates or otherwise closes the purchase of the Prepetition Secured Parties' interests in any of the Debtors, or (vii) use or seek to use Cash Collateral unless otherwise permitted hereby without the prior written consent of the Prepetition Secured Parties; or (f) for objecting to, contesting, delaying, preventing, hindering or otherwise interfering with in any way with the exercise of rights or remedies by the Agent or the Prepetition Secured Parties with respect to any Prepetition Collateral, including Cash Collateral and any Adequate Protection Collateral, after the occurrence of an Event of Default; provided that, notwithstanding anything to the contrary in this paragraph, any Creditors' Committee may use Prepetition Collateral, including Cash Collateral, and the proceeds thereof to investigate (y) the claims and liens of the Prepetition Secured Parties, solely to the extent set forth in this paragraph (but not to prepare, initiate, litigate, prosecute, object to, or otherwise challenge any of the foregoing) and (z) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties solely to the extent set forth in this paragraph (but not to prepare, initiate, litigate, prosecute, object to, or otherwise challenge any of the foregoing); provided, further that not more than the aggregate of $25,000 of Prepetition Collateral, including Cash Collateral, and the proceeds thereof may be used by the Creditors'

Committee in respect of the investigations set forth in the preceding proviso (the "<u>Investigation Budget</u>").

25.  <u>Releases</u>.   The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 25 shall be deemed immediately effective upon entry of this Interim Order and subject only to the challenge rights set forth in Paragraph 21 above.  The Debtors forever and irrevocably: (a) release, discharge and acquit the Agent and the Prepetition Secured Parties (but excluding Hilco Trading), and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type arising prior to the Petition Date, including, without limitation, any claims arising from any actions relating to any aspect of the relationship by and among the Agent, the Prepetition Secured Parties and the Debtors and their affiliates, (including, without limitation, any equitable subordination claims or defenses), with respect to or relating to the Prepetition Obligations, the Prepetition Liens, the Prepetition Collateral, the Prepetition Loan Documents, the Debtors' attempts to restructure the Prepetition Obligations, any and all claims and causes of action arising under the Bankruptcy Code and any and all claims regarding the validity, priority, enforceability, perfection or avoidability of the liens or claims of the Agent and Prepetition Secured Parties; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations, the Prepetition Liens and the Prepetition Loan Documents.

26.     <u>Prohibition on Granting of Additional Liens and Interests; Use of Prepetition</u>
<u>Collateral</u>.  No liens, claims, interests or priority status, other than the Carve-Out and the Permitted
Encumbrances, having a lien or administrative priority superior to or *pari passu* with that of the
Adequate Protection Superpriority Claims, the Prepetition Liens or the Adequate Protection Liens
shall be granted while any portion of the Prepetition Obligations remain outstanding or any
commitment under the Prepetition Loan Documents remains in effect, all without the prior written
consent of the Prepetition Secured Parties.  Nothing in this Interim Order shall authorize, other
than in the ordinary course of the Debtors' business and pursuant to the Budget, the sale, transfer,
lease, encumbrance, or other disposition of any assets of the Debtors or their respective estates
without the prior written consent of the Prepetition Secured Parties (and no such consent or
direction shall be implied from any other action, inaction, or acquiescence by any of the Prepetition
Secured Parties, the Agent or any order of this Court), except as permitted in the Prepetition Loan
Documents and this Interim Order.

27.     <u>Binding Effect of Interim Order</u>.  Subject to Paragraph 21 hereof, immediately upon
entry of this Interim Order by this Court (notwithstanding any applicable law or rule to the
contrary) the terms and provisions of this Interim Order, including all findings herein, shall be
binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the
Debtors, the Agent, the Prepetition Secured Parties, all other creditors of the Debtors, any
Creditors' Committee, and each of their respective successors and assigns (including, without
limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator
or representative, or similar person appointed in these Chapter 11 Cases or any Successor Case)
and shall inure to the benefit of the Debtors, the Agent, the Prepetition Secured Parties and their
respective successors and assigns.

28.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of these Chapter 11 Cases or any Successor Case, or (d) pursuant to which this Court abstains from hearing any of these Chapter 11 Cases or any Successor Case.  Notwithstanding the entry of any such order, the terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Agent and the Prepetition Secured Parties pursuant to this Interim Order, shall continue in these Chapter 11 Cases, in any Successor Case or following dismissal of these Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Interim Order and not be modified, altered or impaired in any way, whether by act or omission, until all of the Prepetition Obligations has been indefeasibly paid in full in cash and completely satisfied, notwithstanding the occurrence of an Event of Default or any earlier termination of the Debtors' authorization to use the Prepetition Collateral, including Cash Collateral.

29.    <u>Limitation of Liability</u>.  Subject to entry of the Final Order, and solely in the Prepetition Secured Parties' capacity as a lender under the Prepetition Loan Documents, in determining to permit the use of Cash Collateral, making and administering the loans and financial accommodations extended under the Prepetition Loan Documents, extending other financial accommodations to the Debtors under this Interim Order and the Prepetition Loan Documents, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the Prepetition Loan Documents, as applicable, the Agent and each of the Prepetition Secured Parties (in their respective capacity as such) or any successor of any of the foregoing shall not (a) be deemed to be in "control" of the operations of the Debtors or any of their affiliates, (b) owe any

fiduciary duty to the Debtors, their respective creditors, shareholders or estates, and/or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors or any of their affiliates (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq*., as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order or the Prepetition Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Agent or any of the Prepetition Secured Parties, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

30.     <u>Insurance</u>. To the extent the Agent or any of the Prepetition Secured Parties are listed as loss payee under the Debtors' insurance policies, and if the Agent or any of the Prepetition Secured Parties receive any proceeds, they shall distribute any proceeds recovered or received in respect of any such insurance policies, to the extent such proceeds are proceeds of Prepetition Collateral, to pay the Prepetition Obligations, subject to the terms of the Prepetition Loan Documents.  The Debtors shall maintain insurance on the Prepetition Collateral in amounts, for the risks, and by the entities as required under the Prepetition Loan Documents.

31.     <u>Collateral Rights</u>.  If any party who holds a lien or security interest in any of the Prepetition Collateral that is junior and/or subordinate to the Adequate Protection Liens or the Prepetition Liens in such Prepetition Collateral receives or is paid any proceeds of such Prepetition Collateral, or receives any other payment or distribution with respect thereto from any other source, prior to the indefeasible payment in full in cash and the complete satisfaction of the

Prepetition Obligations under the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Prepetition Collateral in trust for the Agent (on behalf of the Prepetition Secured Parties) and shall immediately turn over such proceeds to the Agent for application to repay the Prepetition Obligations in accordance with the Prepetition Loan Documents and this Interim Order until such Prepetition Obligations are indefeasibly paid in full in cash.

32.    <u>No Waiver</u>.  Other than as provided for in this Interim Order, nothing in this Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtors, the Agent or the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

33.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable, *nunc pro tunc* to the Petition Date, immediately upon entry hereof.  Notwithstanding any Bankruptcy Rule, any Local Rule, any Federal Rule of Civil Procedure, or other applicable law, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

34.    <u>Proofs of Claim</u>.  Neither the Agent nor any of the Prepetition Secured Parties shall be required to file any proofs of claim in any of these Chapter 11 Cases or a Successor Case for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Agent and each of the Prepetition Secured Parties upon approval of this Interim Order, and the Agent and all of the Prepetition Secured Parties shall be treated under section 502(a) of the Bankruptcy Code as if they each had filed a proof of claim(s).  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in

any of these Chapter 11 Cases or a Successor Case to the contrary, the Agent and each of the Prepetition Secured Parties are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim(s) and/or aggregate proofs of claims in each of these Chapter 11 Cases or a Successor Case for any claim allowed herein.

35.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any party, creditor, equity holder, other entity or any direct, indirect or incidental beneficiary other than (a) the Agent and each of the Prepetition Secured Parties and their respective Representatives, (b) the Debtors and (c) the respective successors and assigns of each of the foregoing.

36.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

37.     <u>Rights Reserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (a) the Agent's and the Prepetition Secured Parties' respective rights to pursue any and all rights and remedies under the Bankruptcy Code, the Prepetition Loan Documents or any other applicable agreement or law, or seek any other or supplemental relief in respect of the Debtors, including the right to seek new, different or additional adequate protection, as applicable, or the Debtors' or any other party in interest's rights to oppose such relief, or (b) any of the rights and remedies of the Debtors, the Agent, the Prepetition Secured Parties, or any other party in interest under the Prepetition Loan Documents or other applicable agreement, the Bankruptcy Code or applicable non-bankruptcy law.

32205020.7

44

38.    <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

39.    <u>Necessary Action</u>.   The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

40.    <u>Retention of Jurisdiction</u>.   The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order, including following confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

41.    <u>Final Hearing</u>.   The Final Hearing shall be held on _____, 2024 at _____ (prevailing Eastern Time).  Any objections or responses to entry of the Final Order shall be filed on or before _____ at 4:00 p.m. (prevailing Eastern Time) (the "<u>Objection Deadline</u>") and served on the following parties:  (a) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE, 19801, Attn: Michael R. Nestor, Esq., Andrew Magaziner, Esq. and S. Alexander Faris, Esq.; (b) counsel to the Agent on behalf of the Prepetition Secured Parties, (i) Vedder Price P.C., 1633 Broadway, 31st Floor, New York, NY 10019, Attn: Michael L. Schein, Esq. and Jacqueline Helmrick Carlson, Esq. and (ii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew Ward, Esq.; (c) counsel to Hancock, (i) Carver Darden, Attn. David F. Waguespack, Esq., 1100 Poydras Street, Suite 3100, New Orleans, Louisiana 70163 and (ii) Faegre Drinker Biddle & Reath LLP, Attn. Brett D. Fallon, Esq. and Patrick Jackson, Esq., 222 Delaware Ave., Suite. 1410, Wilmington, Delaware 19801; (d) counsel to any appointed Creditors' Committee; (e) the Debtors, 6892 US Hwy 49 North, Hattiesburg, Mississippi 39402 Attn: Jeffry Martin, Chief Restructuring Officer (jeff@mgpartners.ca); and (f) the office of the

32205020.7

U.S. Trustee.  Notice of the Interim Order will be served in accordance with Local Rule 9013-1(m).

42.    <u>Service of the Interim Order</u>.  The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

**<u>Exhibit 1</u>**

**Budget**

**CCM LLC**
**Cashflow Forecast by Spend Type**
*All Figures $000*

| W/E | 13-Oct | 20-Oct | 27-Oct | 03-Nov | 10-Nov | 17-Nov | 24-Nov | 01-Dec | 08-Dec | 15-Dec | 22-Dec | 29-Dec | 05-Jan | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *1* | *2* | *3* | *4* | *5* | *6* | *7* | *8* | *9* | *10* | *11* | *12* | *13* | | |
| **Operational Cashflow** | | | | | | | | | | | | | | | |
| **Cash Inflows** | | | | | | | | | | | | | | | |
| Retail Sales | 4,486 | 4,831 | 4,828 | 5,265 | 4,971 | 4,527 | 5,323 | 3,961 | 2,128 | 1,846 | 1,621 | 160 | 0 | | 43,945 |
| Sales Tax Collected | 372 | 401 | 401 | 437 | 413 | 376 | 442 | 329 | 177 | 153 | 135 | 13 | 0 | | 3,647 |
| Less: Credit Card Fees | (68) | (73) | (73) | (80) | (75) | (69) | (81) | (60) | (32) | (28) | (25) | (2) | 0 | | (666) |
| Cash in Transit Mvmt | (1,395) | (184) | 2 | (233) | 157 | 237 | (425) | 727 | 979 | 150 | 120 | 780 | 85 | | 1,000 |
| **Total Cash Inflows** | 3,395 | 4,975 | 5,157 | 5,388 | 5,465 | 5,071 | 5,259 | 4,957 | 3,251 | 2,122 | 1,851 | 951 | 85 | | 47,926 |
| **Cash Outflows** | | | | | | | | | | | | | | | |
| Payroll / 401K | 1,144 | 1,132 | 1,132 | 1,127 | 632 | 522 | 522 | 522 | 269 | 269 | 269 | 207 | 56 | | 7,801 |
| Rent | 0 | 883 | 0 | 970 | 0 | 0 | 0 | 412 | 0 | 0 | 0 | 0 | 0 | | 2,264 |
| Transport | 231 | 245 | 254 | 245 | 67 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 1,043 |
| Sales Tax Paid | 0 | 1,013 | 0 | 0 | 0 | 0 | 1,788 | 0 | 0 | 1,559 | 0 | 0 | 478 | | 4,837 |
| Marketing & Liquidation | 0 | 0 | 228 | 227 | 223 | 211 | 211 | 211 | 211 | 169 | 169 | 102 | 18 | | 1,982 |
| Professional Fees | 244 | 286 | 286 | 266 | 288 | 263 | 263 | 263 | 263 | 238 | 238 | 238 | 1,238 | | 4,375 |
| Deposits / Securities | 0 | 375 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (375) | | 0 |
| Insurance | 0 | 0 | 0 | 104 | 0 | 0 | 0 | 282 | 0 | 0 | 0 | 0 | 100 | | 486 |
| Utilities (Vervantis) | 80 | 80 | 80 | 80 | 70 | 70 | 70 | 70 | 70 | 50 | 50 | 50 | 0 | | 820 |
| Other Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 75 | 90 | | 165 |
| 20 Day Vendors | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| BMO Interest | 1,102 | 72 | 65 | 60 | 49 | 39 | 34 | 26 | 21 | 21 | 21 | 21 | 21 | | 1,550 |
| Hancock Mortgage | | | | 132 | | | | | 132 | | | | | | 264 |
| Other Spend | 250 | 233 | 445 | 313 | 352 | 222 | 244 | 207 | 93 | 129 | 161 | 79 | 79 | | 2,805 |
| **Total Cash Outflows** | 3,052 | 4,318 | 2,490 | 3,523 | 1,682 | 1,327 | 3,131 | 1,993 | 1,059 | 2,434 | 907 | 771 | 1,705 | | 28,393 |
| **Operational Cash Movement** | 344 | 657 | 2,667 | 1,866 | 3,782 | 3,744 | 2,128 | 2,964 | 2,192 | (313) | 944 | 179 | (1,619) | | 19,533 |
| | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | | 0 |
| **Non-Operational Cashflow** | | | | | | | | | | | | | | | |
| Other Realizations | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| Net Property Proceeds | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| Net Financed Lease Proceeds | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| Less: Funds Available for distribution | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| **Non-Operational Cash Movement** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| **Total Cash Movement** | 344 | 657 | 2,667 | 1,866 | 3,782 | 3,744 | 2,128 | 2,964 | 2,192 | (313) | 944 | 179 | (1,619) | | 19,533 |
| | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | *0* | | |
| **Cash Balance** | | | | | | | | | | | | | | | |
| Opening Cash Balance | 215 | 1,738 | 594 | 561 | 527 | 509 | 553 | 581 | 545 | 937 | 624 | 1,441 | 1,620 | | 215 |
| Cash Movement | 344 | 657 | 2,667 | 1,866 | 3,782 | 3,744 | 2,128 | 2,964 | 2,192 | (313) | 944 | 179 | (1,619) | | 19,533 |
| Cash Advance | 4,019 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 4,019 |
| Cash Sweep | (2,840) | (1,800) | (2,700) | (1,900) | (3,800) | (3,700) | (2,100) | (3,000) | (1,800) | 0 | (127) | 0 | 0 | | (23,767) |
| **Closing Cash Balance** | 1,738 | 594 | 561 | 527 | 509 | 553 | 581 | 545 | 937 | 624 | 1,441 | 1,620 | 0 | | 0 |
| **BMO Funding** | | | | | | | | | | | | | | | |
| BMO Opening (ABL & FILO) | (27,374) | (28,553) | (26,753) | (24,053) | (22,153) | (18,353) | (14,653) | (12,553) | (9,553) | (7,753) | (7,753) | (7,626) | (7,626) | | (27,374) |
| Cash Sweep / (Advance) | (1,179) | 1,800 | 2,700 | 1,900 | 3,800 | 3,700 | 2,100 | 3,000 | 1,800 | 0 | 127 | 0 | 0 | | 19,748 |
| **BMO Closing (ABL & FILO)** | (28,553) | (26,753) | (24,053) | (22,153) | (18,353) | (14,653) | (12,553) | (9,553) | (7,753) | (7,753) | (7,626) | (7,626) | (7,626) | | (7,626) |
| Borrowing Base | 28,813 | 28,096 | 26,878 | 25,378 | 23,940 | 22,362 | 20,306 | 18,340 | 16,496 | 14,939 | 12,190 | 11,601 | 11,406 | | 0 |
| Availability / (Shortfall) | 260 | 1,343 | 2,826 | 3,225 | 5,587 | 7,709 | 7,754 | 8,788 | 8,743 | 7,186 | 4,565 | 3,975 | 3,780 | | |