IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE



**Thomas M. Horan**

**United States Bankruptcy Judge**

**824 N. Market Street Wilmington, Delaware (302) 252-2888**

May 7, 2025

**VIA CM/ECF**

Ricardo Palacio
Ashby & Geddes, P. A.
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Counsel to George L. Miller, Chapter 7 Trustee

Brett D. Fallon
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Counsel to Hancock Whitney Bank

Mark T. Hurford
A.M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701
Counsel to Hilco Trading, LLC

Ronald S. Gellert
Gellert Seitz Busenkell & Brown LLC
1201 North Orange Street, Third Floor
Wilmington, DE 19801
Counsel to BMO Bank N.A.

Re: HDC Holdings II, LLC, et al., Case No. 24-12307 (TMH)

Dear Counsel:

On April 1, 2025, I conducted a hearing regarding the Motion of Hancock Whitney Bank ("Hancock Whitney") for the Relief from the Automatic Stay (the "Stay Relief Motion") [D.I. 420]. George L. Miller, the chapter 7 trustee, did not

oppose the Stay Relief Motion. Hilco Trading, LLC ("Hilco") did [D.I. 445]. BMO Bank N.A. ("BMO") filed a reservation of rights (the "BMO Reservation") wherein it urged this Court to consolidate proceedings on the Stay Relief Motion with the adversary proceeding captioned Hilco Trading, LLC v. Hancock Whitney Bank and BMO Bank N.A. (the "Adversary Proceeding") (Adv. Pro. No. 25-50391 (TMH)).

Because this is a matter primarily of concern to Hancock Whitney, BMO, Hilco, and the chapter 7 trustee, I am foregoing a discussion of the factual background and procedural history except insofar as such discussion is necessary to explain my ruling.[1]

The gating issue to the resolution of the Stay Relief Motion is whether the LC Account[2] constitutes ABL Collateral for the purposes of Hancock Whitney's subordination of its rights under the Intercreditor Agreement.[3]

Under Schedule I of the Intercreditor Agreement,

"ABL Collateral" means all of the following assets:

(a) all of each Credit Party's (other than Holdings') right, title and interest in, to and under all of the following property now owned or at any time hereafter acquired by such Credit Party or in which such Credit Party now has or at any time in the future may acquire any right, title, or interest:

> …
>
> (xi) all cash, Deposit Accounts, Securities Accounts and Collateral Accounts…[4]

Under Section 2 of the Intercreditor Agreement, Hancock Whitney "agrees not to take any Enforcement Action against any Credit Party or any Collateral until the ABL Obligations are paid in full."[5] Under the Agreement, an "Enforcement Action" includes

> the commencement by ABL Agent or [Hancock Whitney] of any legal proceedings or actions against or with respect to (i) any Credit Party or (ii)

---

[1] Any defined term used in this letter that is not otherwise defined herein will have the meaning ascribed to such term in the Stay Relief Motion.
[2] In the Stay Relief Motion, the term LC Account is defined as Hancock Whitney deposit account no. 63074218. Stay Relief Motion at ¶ 20.
[3] The Intercreditor Agreement was attached to Hilco's Objection to the Stay Relief Motion (the "Hilco Objection") [D.I. 445] as Exhibit A, and was admitted into evidence at the April 1, 2025 hearing.
[4] Intercreditor Agreement at Schedule 1.
[5] Id. at § 2.

2

>any of the Credit Party's property or assets or any Collateral to facilitate any of the actions described [above] including in any Insolvency or Liquidation Proceeding and any action to have the automatic stay lifted…[6]

Thus, if the LC Account is ABL Collateral, then, under the plain language of the Intercreditor Agreement, Hancock Whitney may not seek relief from the automatic stay so long as the obligations to BMO have not been paid in full. If the LC Account is not ABL Collateral, then Hancock Whitney may seek that relief.

I am unable to determine whether the LC Account is ABL Collateral given the current evidentiary record. At the April 1, 2025 hearing, Hancock Whitney presented no witnesses and introduced into evidence a limited number of documents that shed little light on the issue.[7] Hancock Whitney's papers, amplified by comments of counsel at the April 1, 2025 hearing, outline why the ABL Collateral does not include the LC Account. However, Hancock Whitney did not present adequate evidence to support such a finding.

Hancock Whitney contends that Hilco lacks standing to oppose the relief sought in the Stay Relief Motion. Under the Credit Agreement, Hilco is a FILO Lender.[8] A Lender under the Credit Agreement encompasses "the lending institutions from time to time parties hereto."[9] Hancock Whitney argues that Hilco is not a Lender under the Credit Agreement because it is not a "lending institution," but Hancock Whitney is incorrect. Schedule 1.1(b) of the Credit Agreement describes the "Commitments of Lenders," and includes as Lenders both the FILO Lender and the Non-FILO Lenders.[10] Section 13.1 refers to the "FILO Lender in its capacity as a Lender. . ." These are but two examples that demonstrate why the FILO Lender is a Lender under the Credit Agreement.

Hilco argues that even though it is not a party to the Intercreditor Agreement, it is a beneficiary under the Intercreditor Agreement and therefore is

---

[6] Id. at § 1.
[7] Under Rule 4001-1(c)(3) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the hearing on a stay relief motion can be treated as a preliminary hearing at which the Court may hear oral argument and determine whether an evidentiary or final hearing is needed.
[8] Amended and Restated ABL Credit Agreement, dated as of April 21, 2023, at § 1 (attached as Exhibit B to Hilco Objection and admitted into evidence at the April 1, 2025 hearing) ("'FILO Lender' shall mean Hilco Trading LLC.")
[9] Id. at preamble and § 1 ("'Lender' shall have the meaning provided in the preamble to this Agreement.")
[10] Id. at Schedule 1(b).

3

authorized to enforce it. Hancock Whitney disputes this point. The Intercreditor Agreement provides that there are no third-party beneficiaries. It states:

> <u>No Third-Party Beneficiaries; Provisions Solely to Define Relative Rights</u>. This Agreement and the rights and benefits hereof shall inure to the benefit of each of the ABL Claimholders and Real Estate Lender and their respective successors and assigns from time to time. The provisions of this Agreement are and are intended solely for the purpose of defining the relative rights of ABL Agent and the other ABL Claimholders, on the one hand, and Real Estate Lender, on the other hand. None of the Credit Parties or any other creditor shall have any rights hereunder, and neither the Credit Parties nor any other creditor may rely on the terms hereof. Nothing in this Agreement is intended to or shall impair the obligations of any Credit Party, which are absolute and unconditional, to pay the ABL Obligations and the Real Estate Obligations as and when the same shall become due and payable in accordance with their terms.[11]

Therefore, to be a beneficiary of the Intercreditor Agreement, Hilco must be an ABL Claimholder. Under the Intercreditor Agreement, "'ABL Claimholders' means the ABL Agent and each of the other 'Secured Parties' under, and as defined in, the ABL Credit Agreement."[12] Turning back to the Credit Agreement, the term "Secured Parties" means "the Administrative Agent, the Collateral Agent, the Swingline Lender, the Letter of Credit Issuers and each Lender . . ."[13] As explained above, Hilco is a Lender under the Credit Agreement. It follows then that Hilco is an ABL Claimholder under the Intercreditor Agreement. That makes Hilco a beneficiary of the Intercreditor Agreement.

> However, that does not end the inquiry. The Credit Agreement provides that:

> Each Lender hereby irrevocably designates and appoints [BMO] as the agent of such Lender under this Agreement and the other Credit Documents and irrevocably authorizes [BMO], in such capacity, to take such action on its behalf under the provisions of this Agreement and the other Credit Documents and to exercise such powers and perform such duties as are expressly delegated to [BMO] by the terms of this Agreement and the other Credit Documents, together with such other powers as are reasonably incidental thereto.[14]

---

[11] Intercreditor Agreement at §26.
[12] <u>Id.</u> at § 1.
[13] Credit Agreement at § 1.
[14] <u>Id.</u> at § 12.1.

4

While the Credit Agreement provides that Hilco has designated and appointed BMO as its agent, it does not provide that Hilco has given up its right to advocate for its own interests here. While Hancock Whitney points to section 13.1 of the Credit Agreement for the proposition that Hilco as FILO Lender has no right to oppose the Stay Relief Motion, the text of section 13.1 does not support that reading. It is true that the FILO Lender's rights are limited in numerous respects by section 13.1, but the question is whether Hilco's rights are limited in this particular respect. They are not. Section 13.1 specifically addresses the limitations on Hilco's authority to act in these bankruptcy cases. Those limitations, in relevant part, prohibit Hilco, as FILO Lender, from "object[ing] to, imped[ing], or delay[ing] the exercise of any right or the taking of any action by [BMO] . . ."[15] BMO has not supported the Stay Relief Motion, so Hilco is not acting contrary to BMO's rights as the ABL Agent under section 13.1.

In the BMO Reservation, BMO stated that "there exist legal and factual disputes as to whether the LC Funds are ABL Collateral . . ., which this Court needs to resolve before any relief can be granted and any LC Funds can be applied or distributed."[16] I agree. Therefore, under Local Rule 4001-1(c)(3), I will schedule a final evidentiary hearing to be held no later than June 6, 2025. Counsel is instructed to confer regarding an expedited schedule for the exchange of discovery and to contact my chambers for a date for the final hearing.

_[signature: Thomas M. Horan]_

_____
Thomas M. Horan
United States Bankruptcy Judge

---

[15] Id. at § 13.1.
[16] BMO Reservation at ¶ 2.